I. Raymond KREMER and Eugene Frohlich, Plaintiffs,

v.

William STEWART et al., Defendants.

Civ. A. No. 73–2679.

United States District Court, E. D. Pennsylvania.

May 29, 1974.

I. Raymond Kremer, Philadelphia, Pa., for plaintiffs.

William P. Stewart, James D. Crawford, Philadelphia, Pa., for Shoyer and Jamieson.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The present action is an action for deprivation of civil rights under 42 U.S.C. § 1983. The defendants have filed motions to dismiss, and have supported these motions with affidavits. Therefore, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, we shall treat defendants' motions to dismiss as motions for summary judgment under Rule 56.

The undisputed facts are as follows. In the Fall of 1971, the President Judge of the Court of Common Pleas of Philadelphia County, defendant, The Honorable D. Donald Jamieson, appointed a special counsel to investigate alleged improper solicitation by certain members of the Philadelphia Bar. The special counsel, defendant William Stewart, was to act under the supervision of the Court and was to be responsible to it. In other words, this investigation was a judicial investigation.

On October 24, 1972, the plaintiff Eugene Frohlich was subpoenaed to testify before the Judge presiding over the special judicial investigation, the defendant, The Honorable Kendall H. Shoyer, as to the manner in which he had obtained "X", a lawyer under investigation for improper practices, as counsel in a personal injury case. As soon as he received this subpoena, Frohlich contacted "X" who told him that he should contact plaintiff Raymond Kremer to represent him at the hearing. When Frohlich asked "X" why it was necessary to have a lawyer, "X" replied "It is a nice thing to have when you go in for the hearing." Frohlich was also advised that Kremer's representation would not cost him anything.

Plaintiff Kremer testified at the hearing on November 3, 1972, that he entered into an arrangement with "X" in which he agreed to represent any and all of "X's" former clients who were called as witnesses before the Court for a flat fee of $350 per witness. Based on this information, defendant Stewart, in his capacity as special counsel for the investigation, challenged Kremer's right to represent Frohlich on the grounds that "X's" referral of Frohlich to Kremer and his prepayment for Kremer's services was tantamount to "X's" representing Frohlich before the Court himself, which, according to defendant Stewart, created a conflict of interest potentially damaging to the client and undermined the confidentiality and efficacy of the investigation. Plaintiff Frohlich, waiving his attorney-client privilege, testified that Kremer had disclosed the details of prepayment to him and had warned him of a possible conflict of interest, but Frohlich declared that he trusted Kremer and that he wanted Kremer and only Kremer as his attorney. Nevertheless, Judge Shoyer, who was presiding over the hearing, disqualified Kremer from representing Frohlich during the investigation. It appears that Judge Shoyer's ruling was limited to Kremer's capacity to represent Frohlich only, and did not include in its ban any of the other witnesses or potential witnesses before the investigation.

When plaintiff Frohlich advised the Court that he neither wanted counsel appointed for him nor wished to retain any other attorney except Mr. Kremer, whom the Court had unconditionally disqualified from representing him, defendant Stewart abstained from further questioning of the witness until the matter could be resolved on appeal in the state courts. On July 2, 1973, the Supreme Court of Pennsylvania refused to grant plaintiff Kremer's petition for mandamus on the grounds that there was no "extreme necessity" justifying such action. Plaintiff Frohlich was again called to testify before the investigating court. He indicated to Kremer that he still wished Kremer to represent him, but Kremer informed him that he was still barred from representing him

by Judge Shoyer's order. Frohlich appeared and testified before the Court on November 28, 1973. The record does not show whether or not he was represented by counsel other than Mr. Kremer, nor does it show whether or not the Court or defendant Stewart advised him of his Fifth Amendment right against self-incrimination.

### Mootness

■ All three defendants moved to dismiss the complaint on the grounds that the acts complained of have terminated, and that therefore the action is moot. An essential element in this argument is the immunity of all three defendants from claims for damages under Section 1983; if only equitable relief is available, the case will be moot unless there is some ongoing activity to enjoin. There is no question that the judicial defendants are immune from damages under Section 1983, and it is generally recognized that elected prosecutors (or their subordinates) enjoy a similar type of immunity. Bauers v. Heisel, 361 F. 2d 581 (3rd Cir. 1966). Although defendant Stewart is not an elected prosecutor, we believe that he meets the other standards set forth in the Heisel case sufficiently to qualify him for an immunity similar to the immunity afforded judges. Thus the question of mootness must be addressed.

■ Defendants aver that the investigation phase of this extraordinary judicial inquiry into improper behavior by members of the bar is over except for the questioning of a few witnesses not covered by Judge Shoyer's order, and that since plaintiff Frohlich is in no further danger of being called before the investigating court, the matter is moot. However, defendants do concede that plaintiff Frohlich may be called before the three-judge panel which is to adjudicate the charges resulting from the investigation. Likewise, defendants do not explicitly deny plaintiffs' contention that the testimony elicited from Frohlich on November 28, 1973 will not be used during this adjudicative procedure. We cannot artificially divide this judicial disciplinary procedure into two phases, investigatory and adjudicatory, and hold that a claim that this procedure violates civil rights is moot merely because the investigatory phase is over. Plaintiff Kremer still faces the likelihood that he will be barred from representing Frohlich during the three-judge deliberative proceeding; plaintiff Frohlich still faces the possibility that the testimony elicited from him without counsel could be used against him at either this proceeding or some future date. We find that the case before us is still an active controversy.

■ However, the claim does seem moot as to The Honorable Kendall H. Shoyer, since his order does seem to have terminated with the investigative proceedings, and he is not part of the three-judge court nor in any way a supervisor of the entire proceeding. Therefore, he shall be dismissed as a defendant from the action.

### Merits of the Case

Plaintiff Kremer alleges that he was denied the right to practice law by Judge Shoyer, a right which he claims is protected by the First Amendment. Plaintiff Kremer also alleges that Judge Shoyer's ruling deprived him of equal protection of the laws required by the Fourteenth Amendment of the Constitution. Plaintiff Frohlich claims that Judge Shoyer's order deprived him of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Both plaintiffs allege that the entire judicial proceeding violates the due process requirements of the Constitution, as well as the Seventh and Tenth Amendments of the United States Constitution.

■ As to plaintiff Kremer's First and Fourteenth Amendment claims, the facts of the alleged deprivation are not in dispute. The issue is plainly: Can a court which is investigating possible violations of the Canon of Ethics by mem-

bers of its Bar constitutionally prohibit a witness from being represented by the attorney of his choice when that attorney has been prepaid for representing the witness by the subject of the investigation?

■ It is our opinion that under the circumstances of this case the conduct of defendant Stewart in moving for the disqualification of plaintiff Kremer and the conduct of defendant, The Honorable Kendall H. Shoyer, in disqualifying him was reasonable and did not constitute a deprivation of plaintiff Kremer's constitutional rights. Certainly the defendants were justified in noting the appearance of a conflict of interest, even if one did not exist in fact. The fact that plaintiff Frohlich may have waived this conflict of interest does not satisfy the court's and the prosecutor's desire to get all the facts without any obstructions by the attorney under investigation, to maintain the confidentiality of the investigation, and to keep the investigation free from the appearance of conflicts of interest. The courts have recognized that a criminal defendant can be deprived of the right to the attorney of his choice if that choice is not properly exercised, United States v. Hampton, 457 F.2d 299 (7th Cir. 1972); Raullerson v. Patterson, 272 F.Supp. 495 (D. Colo.1967), or when the exercise of that choice would defeat the ability of the court to control its docket, United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3rd Cir. 1969), cert. denied 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). Certainly the efficacy and the propriety of a judicial investigation into the ethics of the Bar is as important a state interest as timeliness or control of the court's calendar. The interest of the state courts in regulating the professional conduct of the Bar has been recognized as a substantial one by the federal courts; "state courts have traditionally been allowed wide discretion in the establishment and application of standards of professional conduct and moral character to be observed by their court officers." Erdmann v. Stevens, 458 F.2d 1205, 1210 (2d Cir.), cert. denied 409 U.S. 889, 93 S.Ct. 126, 34 L Ed.2d 147 (1972).

■ However, there are additional constitutional considerations involved in plaintiff Frohlich's claim. Although plaintiff Frohlich was not subjected to an unconstitutional deprivation of counsel by the conduct of defendants Stewart or Shoyer, their actions may have infringed his Fifth Amendment right against self-incrimination. This is not to say that Frohlich should have been allowed to stymie the investigation by insisting that he be represented by Kremer; however, certain precautions should have been taken by the defendants before Frohlich was questioned without an attorney. The most prominent of any such precautions would seem to be a statement to Frohlich that he had the right not to answer any questions he felt might tend to incriminate him as well as a description of any areas to be covered in the investigation which might conceivably lead to information which might jeopardize him. Of course defendants assert that no areas of the investigation involved a danger of self-incrimination to Frohlich, but this assertion is fervently contested by plaintiffs. By stating the above, we do not mean to say that Frohlich was questioned without adequate warning, for we are ignorant of the circumstances of the November, 1973 questioning of Frohlich, even to the point of whether or not he had an attorney. We are merely stating that we lack the facts to enter summary judgment against plaintiff Frohlich on this ground. Summary judgment seems particularly inappropriate, where, as here, plaintiffs allege that defendant Stewart stated in the presence of Frohlich that it was improper, unethical and an obstruction of the investigation for plaintiff Kremer to advise his clients to take the Fifth Amendment, an allegation which remains uncontradicted by defendants.

The Court finds no merit in plaintiffs' contentions that the judicial investigation itself, by amalgamating judicial and prosecutorial functions, violates due process or that the rights preserved to plaintiffs by the Seventh, Tenth, or Fourteenth Amendments have been violated.