**Robert N. KISSELL and Beverly J. Kissell, Plaintiffs-Appellants,**

v.

**Sheldon A. BRESKOW, Defendant-Appellee.**

No. 77–1889.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1978.

Decided July 18, 1978.

Lendall B. Terry, Osgood, Ind., for plaintiffs-appellants.

Virgil L. Beeler, Indianapolis, Ind., for defendant-appellee.

Before SWYGERT and TONE, Circuit Judges, and MARKEY, Chief Judge of the Court of Customs and Patent Appeals.*

PER CURIAM.

Appeal from the district court's grant of summary judgment for Breskow in an action under 42 U.S.C. § 1983,[1] alleging that Breskow violated the Kissells' constitutional rights to court access and choice of counsel. We affirm.

*Background*

Kissells' attorney, Lendall B. Terry (Terry), assumed office as Indiana state judge, Ripley Circuit Court on January 1, 1973. On February 20, 1975, the Supreme Court of Indiana in *In the Matter of Terry, Judge of the Ripley Circuit Court, 80th Judicial Circuit,* 323 N.E.2d 192 (Ind.1975), found that Terry's conduct violated the Code of Judicial Conduct and Ethics and ordered him suspended without pay. A hearing examiner had found that Terry's conduct also violated the Code of Professional Responsibility; however, the Indiana Supreme Court did not take any disciplinary action against Terry as a member of the bar.

Terry, as attorney for the Kissells, filed an action in Ripley Circuit Court on December 22, 1976, naming John L. Kellerman and William W. Greeman as defendants. Kellerman and Greeman were two attorneys who had signed a "grievance" initiating the disciplinary proceedings that resulted in Terry's suspension from the bench. On December 28, 1976, Terry filed another action in Ripley Circuit Court, this time as attorney for Charles and Linda Smith, also against Kellerman and Greeman. On January 3, 1977, Terry, as plaintiff, filed a third state action against Kellerman and Greeman.

Also on January 3, 1977, Breskow assumed the office of Executive Secretary of the Disciplinary Commission of Indiana. The members of that Commission are appointed by the Indiana Supreme Court and are empowered to investigate and prosecute claims of misconduct by Indiana attorneys. The members of the Commission appoint the Executive Secretary with the approval of the Indiana Supreme Court.

The functions of the Executive Secretary are spelled out in §§ 10–14, Rule 23 of the Indiana Rules for Admission to the Bar and the Discipline of Attorneys (Rule 23). Rule 23 charges the Executive Secretary with the duty of investigating alleged misconduct by Indiana attorneys, and of presenting charges and making recommendations to the Disciplinary Commission on whether disciplinary action is required. The Executive Secretary also prosecutes cases of attorney misconduct before the Indiana Supreme Court.

After assuming the office of Executive Secretary, Breskow received communications concerning Terry from members of the bar and the Disciplinary Commission. On February 10, 1977, Breskow requested the Disciplinary Commission to consider asking the Indiana Supreme Court to decide what, if any, disciplinary action should be taken against Terry for Disciplinary Rules violations not acted on in *Terry, supra.* Breskow also presented the Commission with additional professional misconduct charges against Terry. Breskow notified Terry of the additional charges as required by Rule 23, § 10(d). That notification is commonly called a "grievance" form.

In that grievance, Breskow alleged, *inter alia,* that the actions instituted by the Kissells, Smiths and Terry against Kellerman and Greeman "may be groundless and aimed at harassment," because those ac-

* The Honorable Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation.

1. § 1983:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

tions were taken against attorneys who had participated in the proceeding resulting in Terry's removal from the bench. Breskow further alleged in that grievance that in November, 1976, Terry had attempted to bribe a state prosecutor through the prosecutor's law partner, and that Terry had been indicted for that offense by the Jefferson County Grand Jury on testimony of the prosecutor and the prosecutor's law partner. Breskow pointed out in the grievance that Terry was not convicted of the bribery charge, and that Terry had filed three law suits in three counties against the prosecutor and the prosecutor's law partner seeking $13,000,000 in damages for alleged false imprisonment, malicious prosecution and defamation of character. In the grievance, Breskow alleged that those three suits "may be groundless, an abuse of process and aimed at harassment." Breskow further alleged in the grievance that Terry had improperly contacted prospective members of a Grand Jury resulting in dismissal of that Grand Jury.

Breskow did not divulge the contents of the grievance to the judge presiding over Kissells' action or to anyone involved in that action except Terry, Breskow informed only Terry, the Disciplinary Commission, and the Commission staff and counsel.

On February 10, 1977, the Judge Pro Tempore of the Ripley Circuit Court entered an order denying a motion by Kellerman and Greeman to dismiss the Smiths' complaint. On February 17, 1977, the Judge Pro Tempore also denied a motion to dismiss the Kissells' complaint against Kellerman and Greeman.

On February 24, 1977, the Kissells dismissed Terry as their attorney in the state court action. However, on April 6, 1977, after the present federal action was filed, Terry reentered his appearance in that state court action on behalf of Mr. Kissell only. The record does not reveal why Mrs. Kissell did not join in authorizing that appearance. Apparently, that state court action remains pending.

On March 8, 1977, Terry mailed a grievance response to each member of the Disciplinary Commission and each Justice of the Indiana Supreme Court. On March 11, 1977, Breskow reported to the Disciplinary Commission his consideration of the charges against Terry and whether the Commission should authorize a supplemental complaint against Terry with the Clerk of the Indiana Supreme Court. On the same day, the Kissells filed their complaint in this case under 42 U.S.C. § 1983, seeking damages from Breskow for allegedly violating their constitutional rights to court access and choice of counsel. The "violation" allegedly resided in Breskow's presentation of charges against Terry to the Disciplinary Commission and in his notification to Terry of those charges. The damages sought are in the exact amount claimed against Kellerman and Greeman in the pending state court action, plus punitive damages.

On March 23, 1977, the Indiana Supreme Court denied a petition by Terry to terminate his suspension without pay. In a per curiam opinion, the Court adopted the findings of fact submitted by a hearing office (1) that Terry had contacted the state prosecutor's law partner and offered him $1,000 to keep an indictment from being returned against a police officer; (2) that after that prosecutor's law partner had testified before the Grand Jury, Terry had filed three lawsuits in three counties against that partner seeking $13,000,000 in damages; (3) that Terry had distributed over 2,000 copies of letters addressed to the Chief Justice of the Indiana Supreme Court containing false and misleading accusations against various judges and attorneys; and, (4) that Terry continued to bear malice and animosity toward certain lawyers in Ripley County and toward Justice Hunter of the Indiana Supreme Court and was attempting to seek impeachment of Justice Hunter because he authored the opinion suspending Terry from the bench.

On July 13, 1977, the Disciplinary Commission, under Rule 23, § 12, filed a Supplemental Verified Complaint for Disciplinary Action with the Indiana Supreme Court requesting that Terry be disbarred, or otherwise disciplined, as warranted, for professional misconduct.

428

## Issues

(1) Whether there is a genuine issue of material fact, and (2) whether Breskow is clothed with quasi-judicial immunity in performing his duties as Executive Secretary of the Disciplinary Commission.

## OPINION

### (1) *Genuine Issue of Material Fact*

The Kissells rely on an affidavit by Terry[2] to establish a genuine issue of material fact. Terry's affidavit does not dispute that Breskow acted at all material times as Executive Secretary, or that all of Breskow's actions occurred in the course of performing duties of that office. Reliance is placed on the allegation in Terry's affidavit that Breskow made a perjured statement with malice, thus prejudicing Kissells' pending actions.

■ Though Terry's charge is serious and not to be lightly taken, it is clear from the undisputed facts that the charge is baseless. The allegedly perjured statement concerns the grievance Breskow presented to the Disciplinary Commission on February 10, 1977. Terry avers that Breskow, in that grievance, stated that Terry had attempted to bribe a state prosecutor. Terry received a directed verdict of acquittal on that charge and avers that Breskow thus made a perjured statement with malice because Breskow knew of the acquittal. What Terry overlooks is that, in the same grievance, Breskow also stated that Terry had *not* been convicted of that bribery charge. Rather than a perjured statement, Breskow simply recited facts for consideration by the Commission in its determination of whether disciplinary action should be taken against Terry. That Terry was acquitted on the bribery charge does not necessarily preclude disciplinary proceedings. *Grossgold v. Su-*

preme *Court of Illinois,* 557 F.2d 122 (7th Cir. 1977).

The Kissells also rely on their pleadings to create alleged material fact issues requiring a trial.[3] Fed.R.Civ.P. 56(e), however, makes clear that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response * * * must set forth specific facts showing that there is a genuine issue for trial."

■ The Kissells charge that there is a genuine issue of Breskow's credibility, because he is "interested" and because their complaint charges Breskow with perjury. Those allegations may concern the weight to be given Breskow's affidavit, but do not themselves create triable issues of fact.

In a nutshell, the items cited by the Kissells as establishing material issues of fact amount to no more than "mere general allegations which do not reveal detailed and precise facts," *Liberty Leasing Co. v. Hillsum Sales Corp.,* 380 F.2d 1013, 1015 (5th Cir. 1967), requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). There is present here no genuine issue of material fact.

### (2) *Quasi-Judicial Immunity*

Breskow argues that his role as Executive Secretary places him in a position analogous to that of a prosecuting attorney, thereby clothing him with quasi-judicial absolute immunity. The Kissells argue that Breskow's role is not that of a prosecutor and hence provides at best only qualified immunity, which, if it exists, is no bar to this action because Breskow did not exhibit good faith in pressing the grievance against Terry.[4]

2. The Terry affidavit was filed in response to an affidavit by Breskow.

3. Principally, Kissells allege that Breskow "intervened" in Kissells' state court actions, a contention labelled "completely false" by Breskow.

4. Our holding that quasi-judicial immunity applies to Breskow's actions herein, makes it unnecessary to consider the Kissells' arguments respecting qualified immunity. We are constrained to add, however, that no basis exists for a charge of bad faith on the part of Breskow.

Though this court has not heretofore considered whether an officer of a state body charged with disciplining attorneys is clothed with either quasi-judicial or qualified immunity, guidance is not lacking.

In *Clark v. State of Washington,* 366 F.2d 678 (9th Cir. 1966), an attorney disbarred from practice by the Supreme Court of Washington brought an action against the State of Washington and the Washington State Bar Association, seeking, *inter alia,* damages. Federal jurisdiction was sought under the Civil Rights Act, 42 U.S.C. § 1983. The Ninth Circuit held that the district court did not have jurisdiction over the State of Washington because it had not waived its immunity from suit by its own citizens. With respect to the Bar Association, the court concluded:

A prosecuting attorney, as a quasi-judicial officer, enjoys immunity from suit under the Civil Rights Act insofar as his prosecuting functions are concerned. * * * As an arm of the Washington Supreme Court in connection with disciplinary proceedings, the Bar Association is an "integral part of the judicial process" and is therefore entitled to the same immunity which is afforded to prosecuting attorneys in that state. [366 F.2d at 681.] [5]

Similarly, in *Niklaus v. Simmons,* 196 F.Supp. 691 (D.Neb.1961), a disbarred attorney filed suit charging that present and former justices of the Nebraska Supreme Court and other state officials conspired "to injure him, in the name of the 'Nebraska State Bar Association.'" After extensively reviewing disbarment procedures before and after integration of the Nebraska State bar, the court held that the Nebraska Supreme Court justices were immune under the doctrine of judicial immunity and that the Deputy Attorney General, the state official charged with prosecuting disbarment proceedings, was immune under the doctrine of quasi-judicial immunity:

[The Deputy Attorney General] seeks such immunity only in respect of his participation in the disbarment proceeding * * *. [Under the] rules of the Supreme Court of Nebraska * * * the Attorney General prosecutes such proceedings. His presentation of disciplinary proceedings in the Supreme Court is made a part of his official duty as a member of the bar of the court and, for the time being, the state's chief law enforcement officer. For his ministry to the court in the performance of that duty, he is entitled to the immunity he claims, not so much on the score of his own official position, but in the way of the practical implementation of the judicial immunity already considered and determined to exist. [196 F.Supp. at 714.]

Likewise, in *Kremer v. Stewart,* 378 F.Supp. 1195 (E.D.Pa.1974), a special counsel appointed by a state court to investigate alleged improprieties by members of the Philadelphia Bar was held immune from a suit for damages under the Civil Rights Act, 42 U.S.C. § 1983. And, in *Ginger v. Circuit Court for County of Wayne,* 372 F.2d 621 (6th Cir. 1967), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (1967), in an action for damages under § 1983 against the State Circuit Court, state judges, and members of the Grievance Committee of the State Bar of Michigan, the district court said simply, in an opinion adopted by the Sixth Circuit:

[I]t is clear that the defendants were acting within their statutory powers, and the proceedings were within their jurisdiction, wherefore, they are immune from liability for any alleged violation of the Civil Rights Act. [372 F.2d at 625.]

---

**5.** Though the exact procedure is unclear, it appears that Clark was tried before a trial committee of the Bar Association which rendered findings of fact, conclusions of law, and recommended disbarment to the Bar Association's Board of Governors. The Board reviewed the findings, conclusions and trial record, and recommended disbarment to the Washington Supreme Court. The Supreme Court approved the Board's recommendation and ordered disbarment.

We have been presented with no reason, and are aware of none, for departing from that line of authorities.[6]

The considerations giving rise to quasi-judicial immunity for prosecutors were set forth by the Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 424–25, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976):

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

No reason appears for denying the application of the considerations set forth in *Imbler* to persons charged with disciplining attorneys. Having been characterized as "quasi-criminal" proceeding, *In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), disbarment proceedings give rise to the same interests served by freeing discipline officials, to exercise their best judgment, as are served in freeing the discretion of prosecutors.

The controlling question is whether Breskow was acting in a quasi-judicial capacity, or in an investigative "police-related" role. *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974). *See also, Atkins v. Lanning*, 556 F.2d 485 (10th Cir. 1977) (per curiam); *Tyler v. Witkowski*, 511 F.2d 449 (7th Cir. 1975) (per curiam). In deciding whether quasi-judicial immunity applies, the focus must be on the character of the defendant's conduct, not on his motives. *Hampton, supra.*

■ Breskow's conduct here consisted solely in the performance of his duties as Executive Secretary, under the state Rules for Admission to the Bar and the Discipline of Attorneys. Because those duties involve the investigating of alleged attorney misconduct, presenting recommendations to the Disciplinary Commission, and prosecuting cases of attorney misconduct before the Indiana Supreme Court, they are clearly as much quasi-judicial functions as are those of prosecutors.

■ The action complained of here was Breskow's presentation of the grievance to the Disciplinary Commission. Whether there may be circumstances under which a grant of quasi-judicial immunity may be withheld from state officials charged with the duty of disciplining attorneys, no such circumstances are present here. Breskow's actions in determining to file a grievance, in filing the grievance, in notifying Terry, and in seeking a Commission determination on what disciplinary actions should be taken, fall within the normal role of a prosecutor. Those actions are thus entitled to a grant of quasi-judicial immunity.[7]

---

6. Circumstances may require a balancing of interests, *Dacey v. New York County Lawyers' Association*, 423 F.2d 188 (2d Cir. 1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970) leading to a refusal to grant immunity. In *Dacey*, the Second Circuit held that when the Association instituted proceedings for unauthorized practice of law (publishing a book), its role was analogous to that of a public prosecutor, i. e., immunity from § 1983 actions was available. However, the court noted that the grant of immunity to public prosecutors arose from "a balance between the evils inevitable in either alternative." *Gregoire v. Biddle*, 177 F.2d 579 (2d Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). Balancing the First Amendment and other interests in *Dacey*, the court refused immunity to the Association, but distinguished the case from one in which the Association had instituted proceedings to disbar an attorney.

7. Quite apart from the question of immunity for state officials charged with discipline of attorneys, there is no basis for the Kissells' argument that Breskow's actions denied their constitutional right of access to the courts or choice of counsel. To so hold on the facts of this case would have the absurd result of foreclosing all disciplinary action against any attorney who was appearing as counsel in any litigation. The client's right of access to court and free choice of counsel was never intended as a shield for attorneys toward whom the sword of discipline may be directed. Nor were those clients' rights intended as a basis for

Accordingly, there being no genuine issue of material fact and Breskow's challenged actions in the performance of his duties as Executive Secretary being clothed with quasi-judicial absolute immunity, the judgment of the district court is affirmed.

virtual immunity of attorneys from properly brought charges of professional misconduct. We see no reason, in policy or law, for restricting state officials to disciplinary action against attorneys who do not at the moment have a client in court.