**Donald S. EISENBERG, Plaintiff,**

**v.**

**Gerald C. STERNBERG, John B. McCarthy, and Elsa P. Greene, Defendants.**

**No. 86–C–8–C.**

United States District Court, W.D. Wisconsin.

Aug. 13, 1986.

As Amended Aug. 25, 1986.

Donald S. Eisenberg, Middleton, Wis., pro se.

Daniel S. Farwell, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This is an action for damages brought pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986. Jurisdiction is alleged under 28 U.S.C. § 1343(3). Plaintiff asserts that the defendants conspired, in concert with various "non-defendant co-conspirators" (including six Wisconsin supreme court justices and a United States Attorney), to deprive him of his constitutional rights by instigating disciplinary proceedings that resulted in the suspension of his law license. He further asserts that defendants caused the denial of his subsequent petitions for readmission to the practice of law. Plaintiff alleges that defendants deprived him of his constitutional rights to free speech, due process, and equal protection, by opposing his representation of unpopular causes and unpopular clients. The case is now before this court on defendants' motions to dis-

miss the action with prejudice, and with sanctions, including attorney's fees and costs pursuant to Rule II, Federal Rules of Civil Procedure.

Defendants contend that they are absolutely immune from damage suits arising from their roles in the disciplinary proceedings. They characterize plaintiff's suit as a disguised collateral challenge to the factual and legal determinations reached during the state disciplinary proceedings.

Taking the allegations of the complaint as true, and for the sole purpose of deciding these motions, I find the following facts.

### FACTS

Plaintiff was admitted to the practice of law in Wisconsin in 1956. During the past twenty years, up to and including March 31, 1984, plaintiff's practice was devoted principally to the criminal law. In the performance of his profession, plaintiff often represented unpopular causes and clients. Plaintiff has been known for his controversial and flamboyant style, and his vigorous defense on behalf of his clients.

At all times relevant to this action, defendant Gerald C. Sternberg acted under color of state law in his position as Professional Responsibility Administrator of the Board of Attorneys' Professional Responsibility.

At all relevant times, defendants John B. McCarthy and Elsa P. Greene were employees of the Board acting under color of state law.

At all relevant times, Nathan Heffernan, Roland Day, William Callow, Donald Steinmetz, Louis Ceci, and William Bablitch were justices of the Wisconsin Supreme Court.[1]

At all relevant times, John R. Byrnes was the United States Attorney for the Western District of Wisconsin.

From 1977 until December 5, 1985, the defendants, the above-named justices, John Byrnes, and others, agreed and conspired to associate and combine for the purposes of suspending plaintiff's license to practice law, and to deprive plaintiff of the opportunity for readmission to the practice of law. It was agreed that charges would be brought against plaintiff in retaliation for exercising his First Amendment guarantee of free speech. In furtherance of that purpose, defendants committed illegal acts, harassed and arranged to harass plaintiff, harmed plaintiff economically, and attempted to impede or defeat the course of justice in the state of Wisconsin.

John Byrnes aided and abetted the conspiracy in persuading defendants Sternberg and Greene to instigate charges against plaintiff.

Prior to April 1, 1984, in furtherance of the conspiracy, defendant McCarthy solicited others to bring charges of unprofessional conduct against plaintiff.

During the investigative stages of the disciplinary proceedings against plaintiff, defendants operated without rules and advised plaintiff he had no rights during the investigation. Defendants denied plaintiff's request to appear before the board before charges were brought against him. After the investigation, the board filed a complaint and the matter was assigned to a referee appointed by the Wisconsin supreme court for a hearing. The referee recommended that plaintiff be reprimanded.

Prior to April 1, 1984, in furtherance of the conspiracy, defendants induced the above-named Wisconsin supreme court justices to ignore the referee's recommendations and to suspend plaintiff from the practice of law for six months.

Prior to September 23, 1985, defendants recommended that plaintiff not be reinstated to the practice of law, despite recommendations of reinstatement by the District 9 Professional Responsibility Committee.

---

1. Justice Shirley Abrahamson took no part in the Wisconsin supreme court disciplinary proceedings against plaintiff, and is not included in this action.

OPINION

I.

Defendants argue that plaintiff's suit is a disguised collateral attack on the state court judgment, and that this court lacks jurisdiction to entertain it. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). It is true that orders of a state court relating to the admission, discipline, or disbarment of members of its bar may be reviewed only by the United States Supreme Court. *MacKay v. Nesbett,* 412 F.2d 846 (9th Cir.1969). However, plaintiff's action states claims for relief under § 1983 and does not seek review of the state court judgment. It is a personal action for damages against the defendants alleging among other things a conspiracy to deprive plaintiff of his civil rights. Accordingly, jurisdiction is proper under 28 U.S.C. § 1343(3).

II.

Plaintiff has alleged deprivations of his civil rights, in violation of 42 U.S.C. §§ 1983, 1985(3), and 1986. With respect to §§ 1985(3) and 1986, it is clear that plaintiff has failed to state a justiciable claim.

To recover under § 1985(3), a plaintiff must establish the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). This requisite discriminatory animus has been found in discrimination against classes based on race, ethnic origin, sex, religion, or political loyalty. *See Askew v. Bloemker,* 548 F.2d 673, 678 (7th Cir.1976); *Murphy v. Mount Carmel High School,* 543 F.2d 1189, 1192 n. 1 (7th Cir.1976).

Plaintiff has made no allegations relating to race or class. He alleges only that defendants conspired to violate his rights "for exercising his right to Freedom of Speech." This allegation fails to state a claim under § 1985(3).

Section 1986 is derivative of § 1985; it merely provides a remedy for misprision of a violation of § 1985. *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 203 (7th Cir.1985); *Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir.1980). It follows that because plaintiff has failed to state a § 1985 claim, he has no claim under § 1986.

Plaintiff's § 1983 claim is a more difficult matter. Defendants contend that with regard to his conspiracy claim, plaintiff has failed to allege facts with sufficient particularity to properly support a claim of conspiracy. I agree that to plead a conspiracy, plaintiff must do more than allege in a conclusory fashion that a conspiracy exists. *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982); *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 663 (7th Cir. 1978), *cert. denied,* 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). However, even if plaintiff has failed to allege facts sufficient to support a conspiracy claim, his allegations that he was singled out for selective prosecution based on his representation of unpopular causes and clients may state a constitutional claim. To sustain this claim plaintiff would have to show at a minimum: that he had been singled out for prosecution "because of" his unpopular representations; that other lawyers suspected of similar disciplinary code violations had not been subjected to disciplinary proceedings; and that his discriminatory selection was based on an impermissible consideration, such as the exercise of his constitutional rights. *See United States v. Mitchell,* 778 F.2d 1271, 1277 (7th Cir.1985); *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 1532, 84 L.Ed.2d 547 (1985).

However, it is unnecessary to determine whether plaintiff's complaint makes the requisite showing because defendants are absolutely immune from a suit for money damages.

*Immunity*

The sound operation of the judicial process requires that those most closely associated with the judicial system be

afforded some immunity from monetary damages in civil actions. *Simons v. Bellinger*, 643 F.2d 774, 777 (D.C.Cir.1980). Immunity may be absolute, affording protection regardless of motive, or qualified, providing immunity only for acts done reasonably and in good faith. Judges and other officials functionally comparable to judges have long enjoyed absolute immunity from liability for damages. *Butz v. Economou*, 438 U.S. 478, 496, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978); *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Prosecutors have been regarded as "quasi-judicial" officers entitled to the same absolute immunity as judges when their activities are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995 47 L.Ed.2d 128 (1976). Witnesses and jurors have also been held to be integral parts of the judicial process entitled to absolute immunity. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). On the other hand, executive officials are normally entitled only to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

Plaintiff argues that the last word on immunity is found in *Cleavinger v. Saxner*, —— U.S. ——, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). In that case, qualified immunity was applied to members of a federal prison's institution discipline committee. Plaintiff implies that the administrator and the board members responsible for lawyer discipline are more like the members of a prison discipline committee than they are like judges or prosecutors.

■ In determining the scope of immunity, courts are to follow a "functional" approach, based on the analysis of factors characteristic of the judicial process. *Cleavinger v. Saxner*, 106 S.Ct. at 501. An official is entitled to absolute immunity if: (1) the official's judgments are functionally comparable to those of a judge; (2) the nature of the controversy in which the official is forced to become a participant is sufficiently intense that there is a realistic prospect of continuing harassment or intimidation by disappointed litigants; and (3) the system in which the official operates contains safeguards adequate "to reduce the need for private damage actions as a means of controlling unconstitutional conduct," including insulation from political influence, adversarial proceedings, a written record including the decisionmaker's findings and conclusions, and the correctability of error on appeal. *Butz v. Economou*, 438 U.S. at 512, 98 S.Ct. at 2913; *Cleavinger v. Saxner*, 106 S.Ct. at 501.

■ In *Cleavinger*, the supreme court concluded from its evaluation of the relevant aspects of the job of a member of a prison disciplinary committee that "the members [of the prison disciplinary committee] had no identification with the judicial process of the kind and depth that has occasioned absolute immunity." *Cleavinger v. Saxner*, 106 S.Ct. at 504. Performing the same kind of analysis in the circumstances of the present case leads to the opposite conclusion.[2]

2. The Supreme Court has never addressed the question of how the court is to find the facts necessary to its evaluation. What I draw from the Court's opinion is that the analysis is to proceed on the basis of generalized information about the function and purpose of the position at issue rather than upon the particularized fact-finding in which courts customarily engage. Although the Court has not articulated the reason for this legislative type of fact-finding in these cases, the justification may be that the inquiry is essentially a policy determination, and not the resolution of a specific conflict. For example, it is not material to the inquiry whether an official has been subjected to retaliation in the case before the court, but whether he or she might be subject to retaliation in other cases under other circumstances.

In deciding a motion to dismiss, I could not reach an issue that depends for its resolution on facts that have not been alleged in the complaint. It is only the unique nature of the "facts" relevant to a determination of immunity that makes it proper to decide that question on defendants' motion to dismiss. *See, e.g., Imbler v. Pachtman*, 424 U.S. at 416, 96 S.Ct. at 988 (issue of scope of prosecutorial immunity arose on appeal from district court's grant of prosecutor's motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.) *See also Briscoe v. LaHue*, 460 U.S. 325, 327, 103 S.Ct. 1108, 1111, 75 L.Ed.2d 96 (1983).

## A. Judicial Functions of the Board

 Plaintiff argues that the board and the administrator do not fit the definition of "prosecutor" or of any other entity entitled to absolute immunity. His argument misses the point made in *Butz* that immunity does not depend on the status, rank, or title of the defendant, but rather on the nature of his or her responsibilities. *Butz v. Economou,* 438 U.S. at 511, 98 S.Ct. at 2913.

In *Kissell v. Breskow,* 579 F.2d 425, 428–30 (7th Cir.1978), the Court of Appeals for the Seventh Circuit held that the executive secretary of the Disciplinary Commission of Indiana, who was empowered to investigate and prosecute misconduct by Indiana attorneys, was in a "quasi-judicial" position analogous to that of a prosecuting attorney and thus protected by "quasi-judicial" absolute immunity. The *Kissell* holding was echoed in *Clulow v. State of Oklahoma,* 700 F.2d 1291, 1298 (10th Cir.1983), which stated,

> We ... agree with the courts which have held that bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions.

In Wisconsin, the state supreme court has empowered the administrator and the board to "assist in the discharge of the court's constitutional responsibility to supervise the practice of law and protect the public from professional misconduct by members of the bar." Wis. SCR, Preamble, Ch. 21. Under the relevant Wisconsin rules, which parallel the Indiana rules under consideration in *Kissell,* the administrator is appointed by the Board of Attorneys' Professional Responsibility with the approval of the state supreme court, to investigate possible misconduct and report findings and recommendations to the board. *See* SCR 21.01, 21.02. The administrator and the board serve as an arm of the court and perform functions that belong to the judiciary. Wis. SCR 21.15; Preamble. The judicial nature of the work and the similarity of the work to that of a prosecutor and grand jury point to a finding that they are functionally comparable to these "quasi-judicial" entities.

## B. Possibility of Harassment or Intimidation

 Absolute immunity extends to judges "not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray,* 386 U.S. at 554, 87 S.Ct. at 1218 (quoting *Scott v. Stansfield,* L.R.Ex. 220, 223 (1868)). Extending such immunity to the board and its administrator serves the same purpose. It helps ensure that the administrator and board will act vigorously to protect the public from incompetent, impaired, or unethical lawyers. Although there is always a risk that officials having absolute immunity will commit unconstitutional acts for which there is no damage remedy, that risk is outweighed by the importance of preserving their independent judgments. *See Butz v. Economou,* 438 U.S. at 514, 98 S.Ct. at 2914–15.

## C. Safeguards

Finally, the safeguards built into the disciplinary process reduce the need for private damage actions as a means of controlling allegedly unconstitutional conduct. The administrator, the board, the referee appointed by the supreme court to conduct the disciplinary hearing, and even the supreme court itself are subject to numerous checks capable of deterring or correcting unconstitutional conduct.

After the administrator has presented his or her findings and recommendations to the board, the recommendations are reviewed and the board determines whether to dismiss the matter or request additional investigation. Wis. SCR 21.09(2). If the board determines that the case warrants a formal complaint against the lawyer, or a petition seeking reprimand, suspension, disbarment, or other appropriate discipline, the supreme court appoints a referee to conduct a disci-

plinary hearing. Wis. SCR 21.09(4). The referee then files a report with the supreme court setting forth his or her findings and recommendations for discipline, which the board or the lawyer may appeal. If no appeal is timely filed, the supreme court reviews the referee's report and determines the appropriate disciplinary disposition. Wis. SCR 21.09(5).[3] The final disposition of any disciplinary or medical incapacitated proceedings is published in the court's official reporters. The presence of these checks reduces the need for private causes of action, and renders absolute immunity appropriate.

Plaintiff insists that the Wisconsin supreme court justices are not impartial and that the alleged conspiracy involving these justices and the defendants shows that the procedural safeguards can be nullified. However, the system provides still another safeguard: the possibility of appeal to the United States Supreme Court. Finally, the system has built into it two additional safeguards: the board members are appointed for brief three-year terms, and three of the nine members are lay persons. *See Simons v. Bellinger,* 643 F.2d at 782.

I conclude that the administrator and the members of the Board of Attorneys' Professional Responsibility are entitled to absolute immunity. Plaintiff has not alleged that the defendants took any of the challenged actions outside their jurisdiction. *Cf., Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Therefore, the action will be dismissed with prejudice.

### Rule 11

Having determined that the defendants are entitled to absolute immunity in this action, I turn to defendants' request for an order imposing sanctions including costs and reasonable attorney's fees pursuant to Rule 11, Federal Rules of Civil Procedure.

Rule 11 of the Federal Rules of Civil Procedure provides:

the signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Rule 11 was amended in 1983 to increase its effectiveness in deterring abuses, and "to reduce the reluctance of courts to impose sanctions." *Rodgers v. Lincoln Towing,* 771 F.2d at 205 (quoting The Advisory Committee Notes to the 1983 Amendments to Rule 11). The version of Rule 11 in effect before August 1, 1983 required a finding of subjective bad faith on the part of the person against whom fees were to be assessed. *Suslick v. Rothschild Securities Corp.,* 741 F.2d 1000, 1007 (7th Cir.1984). However, under the amended Rule 11, the bad faith requirement is eliminated. The standard under the present rule is one of "reasonableness under the circumstances," rather than a subjective one. *Rodgers v. Lincoln Towing,* 771 F.2d at 205. The issue, then, is whether plaintiff acted unreasonably in filing the actions against the administrator and board members.

---

**3.** Plaintiff contends that according to *Butz,* the safeguard of adversarial process demands the presence of a jury, along with opportunities for objection, cross-examination, rebuttal, and for presentation of the accused's case-in-chief. Plaintiff claims that none of these were available "at the board's final hearing." Although I assume plaintiff is referring to the board's refusal to allow him to present his case before formal charges were filed, I conclude that his reading of *Butz* is erroneous. The referee's hearing affords "the adversarial nature of the process" referred to in *Butz,* and appeal to the United States Supreme Court assures "correctability of error." *See Butz v. Economou,* 438 U.S. at 512, 98 S.Ct. at 2914. *See also Zauderer v. Office of Disciplinary Council of the Supreme Court of Ohio,* 471 U.S. 626, 105 S.Ct. 2265, 2284, 85 L.Ed.2d 652 (1985).

Defendants assert that plaintiff's complaint has no basis in law, and that his allegations are a patent attempt to harass the defendants. Citing *Steinle v. Warren*, 765 F.2d 95 (7th Cir.1985), defendants further urge that plaintiff has engaged in a blatant and vexatious multiplication of proceedings in violation of 28 U.S.C. § 1927.

*Steinle* involved a civil rights action by a Wisconsin lawyer against a United States district judge, and a one-time employee of the Wisconsin attorney general's office. The lawyer claimed that the employee entered his law office illegally with the judge's approval to remove a confidential office file, thus depriving the lawyer of his constitutional rights. The judge and the employee filed affidavits denying any knowledge of, or participation in, the alleged break-in. The lawyer produced no evidence in opposition to these affidavits. Furthermore, the action was barred under the statute of limitations, and the lawyer admitted at oral argument that he knew the action was time-barred. Finally, subsequent statements by the lawyer fully exposed the frivolousness of the lawsuit. He admitted that his lawsuit was commenced not to recover damages for alleged violations of his civil rights, but as a last ditch effort to force the judge to excuse himself from a criminal case commenced at the same time, in which several of the lawyer's clients were defendants. *See also Steinle v. Warren*, 582 F.Supp. 1537, 1538–39 (E.D. Wis.1984). On appeal, the Court of Appeals for the Seventh Circuit not only affirmed the district court's award of sanctions, but awarded double costs on the appeal, finding it so completely frivolous that it was in effect a multiplication of proceedings. *Steinle v. Warren*, 765 F.2d at 102.

The facts of the present case differ from those in *Steinle*. This action is not obviously a multiplication of proceedings. Plaintiff has made no admission of pretextual purpose, and the action is not time-barred.

Nevertheless, plaintiff's complaint is disturbing. I agree with the defendants that a large part of plaintiff's complaint clearly has no basis in law. His claims are far-fetched at best. Plaintiff's failure to discuss his claims under §§ 1985 and 1986 in his brief suggests that he understands those claims to be without basis. Most important, plaintiff has refused to address or distinguish established law on the issue of immunity that plainly defeats his claims. For example, plaintiff does not even attempt to argue why *Kissell v. Breskow* should not apply to the facts of this case.[4]

I agree with the defendants that many of plaintiff's allegations are circular and conclusory, and that he has not provided the court with much of the factual predicate to support the crux of his claims. His allegations are very serious. As a lawyer, the plaintiff can be charged with some familiarity with the need, and the purpose, for supplying the requisite particularized facts to justify his position.

However, I am reluctant to conclude that plaintiff's action is unreasonable to the point of violating Rule 11. His arguments (although not entirely explicit) for applying qualified immunity to the administrator and the board members were not entirely frivolous in light of recent decisions such as *Cleavinger*, even though I have concluded that the arguments cannot be sustained. Furthermore, I cannot say at this stage of the litigation that plaintiff's complaint is so frivolous as to render it an abuse of the process, or that it was merely interposed for an improper purpose such as harassment. Accordingly, the motion for sanctions pursuant to Rule 11 will be denied.

## ORDER

IT IS ORDERED that defendants' motion to dismiss, with prejudice, is GRANTED.

---

4. It should be noted that defendants did not discuss certain pivotal cases such as *Kissell* until they filed their reply brief. However, this does not excuse plaintiff from first making his own proper inquiry into the relevant law before bringing an action against defendants who are clearly immune. Rule 11, Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that defendants' motion for Rule 11 sanctions is DENIED.