[No. B002009. Second Dist., Div. Three. July 23, 1984.]

WALTER GREENE, JR., Plaintiff and Appellant, v.
GLORIA ZANK et al., Defendants and Respondents.

**COUNSEL**

Walter Greene, Jr., in pro. per., for Plaintiff and Appellant.

Herbert M. Rosenthal, Marie M. Moffat, Robert M. Sweet and Ellen A. Pansky for Defendants and Appellants.

**OPINION**

**ARABIAN, J.—**

## INTRODUCTION

Plaintiff and appellant, Walter Greene, Jr. (Greene), brought an action against defendants and respondents, Gloria Zank, the State Bar of California, the Committee of Bar Examiners of the State Bar and Mark C. Allen (referred to individually as Zank, State Bar, Committee of Bar Examiners or Committee and Allen, and referred to collectively as defendants), alleging a Civil Rights Act (42 U.S.C. § 1983) violation. The trial court sustained defendants' demurrer without leave to amend and dismissed the action on the ground that judicial (quasi-judicial) immunity shielded the defendants from liability for damages. We affirm the judgment.

## I.

### STATEMENT OF FACTS

The facts, as alleged in Greene's complaint, are set forth below.

Greene sat for and was successful in passing the February of 1982 bar examination. In May of that year, the State Bar advised Greene of his success, but informed him that his certification for admission to the bar would be delayed pending a moral fitness investigation by the Committee of Bar Examiners.

In November of 1982 the State Bar set a date in January of 1983 for a hearing regarding Greene's fitness to practice law. In January Greene discovered that his certification was denied due to a communication between a James L. Meeder, whom he was suing, and the State Bar, specifically Zank, the State Bar attorney in charge of preadmission investigations. In January Greene served Meeder with notice of a State Bar deposition. Thereafter, the January hearing date was stricken and a new date for the hearing was not set. Greene was informed that the State Bar refused to reset the date for the hearing because it wanted to prevent Greene from taking Meeder's deposition.[1]

In May of 1983 Greene discovered that frequent contacts were being maintained between Meeder and the State Bar for the purpose of delaying his admission to practice law in California. Greene believes that the moral fitness investigation was a mere pretext and that the State Bar conspired with Meeder to deny his certification in retaliation for his lawsuit against Meeder.

Greene further alleged that the defendants' conduct was intentional and malicious and that such conduct under color of state law deprived him of rights guaranteed by the Constitution of the United States in violation of the Civil Rights Act (42 U.S.C. § 1983).[2] He prayed for compensatory and punitive damages.

## II.

### ISSUE

The primary question presented by this appeal is whether quasi-judicial immunity protects the State Bar and the Committee of Bar Exam-

---

[1]The record shows that on December 14, 1982, an examiner for the State Bar applied for a continuance of the moral character hearing and for suspension of State Bar discovery pending trial of two federal suits in which Greene was a party and Meeder was opposing counsel. (Meeder is a defendant in still another federal suit brought by Greene.) The examiner expressed concern that permitting State Bar discovery at that time would be prejudicial to the federal litigation set for trial in January of 1983, because the moral character proceeding was concerned with the facts surrounding the litigation. The litigation involved a $72,000 loan made to Greene by his employer and Greene's claims of discriminatory discharge from employment. On December 15, 1982, Meeder and other subpoenaed witnesses filed motions in the State Bar Court to quash subpoenaes for depositions scheduled for December 21, 1982. The motions to quash were granted.

[2]Title 42 United States Code, section 1983 (42 U.S.C. § 1983) states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

iners, and their officials, from liability for damages in a lawsuit brought by an applicant for admission to the State Bar who alleges that delay in processing his preadmission investigation violated the Civil Rights Act (42 U.S.C. § 1983).[3] This is a case of first impression.

### III.

### DISCUSSION

#### A. *Jurisdiction* .

■ The state courts of California have accepted concurrent jurisdiction with the federal courts to adjudicate lawsuits brought under the federal Civil Rights Act (42 U.S.C. § 1983). (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 560 [195 Cal.Rptr. 268]; *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 124 [185 Cal.Rptr. 878]; see *Maine* v. *Thiboutot* (1980) 448 U.S. 1, 3, fn. 1 [65 L.Ed.2d 555, 558, fn. 1, 100 S.Ct. 2502]; *Martinez* v. *California* (1980) 444 U.S. 277, 283, fn. 7 [62 L.Ed.2d 481, 488, fn. 7, 100 S.Ct. 553].)

---

[3]Although Greene did not address the question, defendants urge that the State Bar and the Committee of Bar Examiners, which are state agencies (*Verner* v. *State of Colo.* (D.Colo. 1982) 533 F.Supp. 1109, 1114, affd. (10th Cir. 1983) 716 F.2d 1352, cert. den., — U.S. — [80 L.Ed.2d 558, 104 S.Ct. 2175]), are not suable "persons" under Section 1983. There is much confusion in this area. Some courts have interpreted *Quern* v. *Jordan* (1979) 440 U.S. 332 [59 L.Ed.2d 358, 99 S.Ct. 1139] to hold that a state and state agencies are not "persons" against whom an action may be brought under section 1983 (see, e.g., *Kompara* v. *Board of Regents of the State Univ.* (M.D.Tenn. 1982) 548 F.Supp. 537, 540-542; *Verner* v. *State of Colo., supra*, 533 F.Supp. at p. 1114; *State* v. *Green* (Alaska 1981) 633 P.2d 1381, 1382; *Edgar* v. *State* (1979) 92 Wn.2d 217 [595 P.2d 534, 537], cert. den., 444 U.S. 1077 [62 L.Ed.2d 760, 100 S.Ct. 1026]), while other courts have held that *Quern* v. *Jordan* stands for a more limited proposition, namely, that section 1983 does not abrogate state immunity in federal courts under the Eleventh Amendment (see, e.g., *O'Connor* v. *State of Nev.* (9th Cir. 1982) 686 F.2d 749, 750, cert. den., 459 U.S. 1071 [74 L.Ed.2d 633, 103 S.Ct. 491]; *Ginter* v. *State Bar of Nev.* (9th Cir. 1980) 625 F.2d 829, 830; *Harris* v. *Arizona Bd. of Regents* (D.Ariz. 1981) 528 F.Supp. 987, 992; *Gumbhir* v. *Kansas State Bd. of Pharmacy* (1982) 231 Kan. 507 [646 P.2d 1078, 1083-1084], cert. den., 459 U.S. 1103 [74 L.Ed.2d 950, 103 S.Ct. 724]). The United States Supreme Court has not yet resolved the issue. (See Wolcher, *Sovereign Immunity and the Supremacy Clause: Damages Against States in Their Own Courts for Constitutional Violations* (1981) 69 Cal.L.Rev. 189, 256, fn. 298, 261 (hereinafter cited as *Sovereign Immunity*).) Because the Eleventh Amendment is inapplicable when a section 1983 action is brought in a state court (*Maine* v. *Thiboutot* (1980) 448 U.S. 1, 9, fn. 7 [65 L.Ed.2d 555, 562, fn. 7, 100 S.Ct. 2502]; see Wolcher, *Sovereign Immunity, supra*, at p. 197), a determination by this court as to whether a state and its agencies are section 1983 "persons" would have far reaching consequences for litigants in California forums. Since all of the defendants in the instant case are protected from liability by judicial immunity, and since Greene has not raised nor addressed the issue, we have chosen not to resolve this "knotty question of federal law." (See *Challenge, Inc.* v. *State* Ex Rel. *Corbin* (1983) 138 Ariz.App. 200 [673 P.2d 944, 947].)

B. *Federal law is applicable to section 1983 actions brought in state courts.*

■■■ Inasmuch as a section 1983 action is based on federal statutory law, a state court must look to federal law to determine the conduct which gives rise to an action under the statute. (*Bach* v. *County of Butte, supra,* 147 Cal.App.3d at p. 561.) "Congress has not evinced any intention to defer to the states the definition of the federal right created in section 1983, or to adopt the states' remedies or procedures for the vindication of that right. ■■ ■■ ■■ ■■ It has never indicated an intent to engraft onto the federal right state concepts of sovereign immunity or of state susceptibility to suit . . . ." (*Donovan* v. *Reinbold* (9th Cir. 1970) 433 F.2d 738, 742; see *Williams* v. *Horvath, supra,* 16 Cal.3d at p. 840; *Bach* v. *County of Butte, supra,* 147 Cal.App.3d at p. 561.)[4]

■■■ Thus, where section 1983 claims are submitted to and heard by state courts, it is clear that relevant section 1983 substantive rules must be applied by those courts. (Nahmod, Civil Rights and Civil Liberties Litigation (1979) § 1.12, pp. 16-17; Wright, Law of Federal Courts (3d ed. 1976) pp. 195-196.) These substantive rules include the elements necessary for the prima facie section 1983 cause of action and damages, as well as rules governing absolute and qualified immunity. (Nahmod, *supra,* at p. 17, fn. 83.)

C. *Federal law is applied in state courts to determine if a complaint states a cause of action under section 1983.*

In *Bach* v. *County of Butte, supra,* 147 Cal.App.3d 554, the court held that California state courts should apply federal law to determine whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer. (*Id.,* at p. 563.) The application of federal law in state courts to make that determination encourages "desirable uniformity in adjudication of federally created rights . . . ." (*Brown* v. *Western R. of Alabama* (1949) 338 U.S. 294, 299 [94 L.Ed. 100, 104, 70 S.Ct. 105].)

■■■ For purposes of a federal motion to dismiss a section 1983 complaint,[5] the allegations of the complaint are generally taken as true. (*Hughes*

---

[4]Defendants urge that the governmental immunities of the California Tort Claims Act also bar this action. It is well settled, however, that state law immunities do not override a section 1983 cause of action even when asserted in a state court. (*Martinez* v. *California, supra,* 444 U.S. 277, 284 [62 L.Ed.2d 481, 488]; *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 695, fn. 59 [56 L.Ed.2d 611, 638, fn. 59, 98 S.Ct. 2018]; *Williams* v. *Horvath, supra,* 16 Cal.3d at pp. 839-840; *Fenton* v. *Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797, 808 [185 Cal.Rptr. 758].)

[5]The motion to dismiss for failure to state a claim is the federal equivalent of the general demurrer. (See Fed. Rules Civ. Proc., rule 12, 28 U.S.C.)

v. *Rowe* (1980) 449 U.S. 5, 10, [66 L.Ed.2d 163, 170, 101 S.Ct. 173]; *Cruz* v. *Beto* (1972) 405 U.S. 319, 322 [31 L.Ed.2d 263, 268, 92 S.Ct. 1079].) The controlling standard, with respect to review of a section 1983 complaint prepared by counsel, is that an action may be dismissed for failure to state a claim only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (*Conley* v. *Gibson* (1957) 355 U.S. 41, 45-46, [2 L.Ed.2d 80, 84, 78 S.Ct. 99]; *Cohen* v. *Illinois Institute of Technology* (7th Cir. 1978) 581 F.2d 658, 663, cert. den. (1979) 439 U.S. 1135 [59 L.Ed.2d 97, 99 S.Ct. 1058]; see *Bach* v. *County of Butte, supra,* 147 Cal.App.3d at p. 564.)[6]

D. *The role of the State Bar and the Committee of Bar Examiners in the attorney admission process.*

Before discussing the controlling federal law pertaining to judicial immunity, we explain briefly the role in the admission process of the State Bar, the Committee of Bar Examiners and the State Bar Division of Trial Counsel (Zank's division).

By enactment of the State Bar Act of 1927 (Stats. 1927, ch. 34, p. 38), California joined the bar integration movement (see Craig, *What of the State Bar Act?* (1927) 2 State Bar J. 92). The feature of this type of organization which distinguishes it from a mere bar association is that all practicing attorneys in the state are required to be members of the state bar, are subject to the rules of the bar, including a provision for payment of an annual fee, are required to adhere to a code of ethics and are subject to disciplinary proceedings for infractions of the code. (See 7 Cal.Jur.3d, Attorneys at Law, § 25, p. 280.)

■ The State Bar Act (now Bus. & Prof. Code, § 6000 et seq.), however, did not change the Supreme Court's historical role in controlling admission, discipline and disbarment of persons entitled to practice before it. (*Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 728 [147 Cal.Rptr. 631, 581 P.2d 636]; *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 300 [19 Cal.Rptr. 153, 368 P.2d 697, 92 A.L.R.2d 1210].) Rather, by establishing the State Bar, the act created an organization which acts as an arm or a branch of the Supreme Court in these matters. (*Jacobs* v. *State Bar* (1977) 20 Cal.3d 191, 196 [141 Cal.Rptr. 812, 570 P.2d 1230];

---

[6]Federal law has two standards for reviewing the sufficiency of section 1983 complaints, depending on whether the complaint has been prepared by a litigant in propria persona or by an attorney. (*Hughes* v. *Rowe, supra,* 449 U.S. 5, 9 [66 L.Ed.2d 163, 169]; *Haines* v. *Kerner* (1972) 404 U.S. 519, 520 [30 L.Ed.2d 652, 654, 92 S.Ct. 594].) A section 1983 complaint drafted by a litigant in propria persona is held to less stringent standards than formal pleadings which are drafted by lawyers. (*Ibid.*)

*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 224-225 [113 Cal.Rptr. 175, 520 P.2d 991]; *Preston* v. *State Bar* (1946) 28 Cal.2d 643, 650 [171 P.2d 435].) The State Bar, however, acts solely in an advisory capacity, as only the Supreme Court has inherent power and authority to admit an applicant to practice law in the state or to reinstate an applicant previously disbarred. (*Hustedt* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 329, 338-339 [178 Cal.Rptr. 801, 636 P.2d 1139]; *Brotsky* v. *State Bar, supra,* 57 Cal.2d at p. 300-301; *In re Lacey* (1938) 11 Cal.2d 699, 701 [81 P.2d 935]; *Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 443, 446 [281 P. 1018, 66 A.L.R. 1507]; see Bus. & Prof. Code, §§ 6064, 6066, 6078, 6081-6083.)

The State Bar Act also provides for the organization of committees by the State Bar. (Bus. & Prof. Code, § 6040 et seq.) One such committee, the Committee of Bar Examiners, has the power to examine applicants for admission to practice law, to administer the requirements for admission to practice, and to certify to the Supreme Court for admission those applicants who meet the requirements. (Bus. & Prof. Code, § 6046; see Rules Regulating Admission to Practice Law, rule 1.)

The Committee of Bar Examiners, subject to approval by the State Bar, may adopt reasonable rules and regulations as necessary or advisable for making effective the qualifications prescribed by law for admission to practice. (Bus. & Prof. Code, § 6047; see Rules Regulating Admission to Practice Law.)[7] The requirement of good moral character (Bus. & Prof. Code, §§ 6060, subd. (b), 6062, subd. (b))[8] is implemented by an investigative procedure directed by the Committee of Bar Examiners (see Rules Regulating Admission to Practice Law, rule X). █ The Committee of Bar Examiners' authority is limited to investigating and recommending for admission those applicants found by it to be of the prescribed standards. (*Brydonjack* v. *State Bar, supra,* 208 Cal. at pp. 445-446.) Only the Supreme Court has the plenary power to admit applicants who, in the opinion of the court, meet the prescribed test, whether or not the Committee agrees with the conclusion of the court. (*Ibid.*; see *Preston* v. *State Bar, supra,* 28 Cal.2d at p. 650.) The fact that the Committee of Bar Examiners must certify an applicant as fit to be admitted to the practice of law (Bus. & Prof. Code, § 6064) does not violate this principle, because it is provided by

---

[7]The current State Bar Rules Regulating Admission to Practice Law in California, as amended to May 20, 1983, are found in Deering's California Codes Annotated, Rules of Court (1980 ed., 1984 cum. supp.) and in 23 West's Anno. Cal. Codes, pt. 2, Civ. and Crim. Court Rules (1981 ed., 1984 cum. supp.).

[8]"The term 'good moral character' includes qualities of honesty, fairness, candor, trustworthiness, observance of fiduciary·responsibility, of the laws of the state and the nation and respect for the rights of others and for the judicial process." (Rules Regulating Admission to Practice Law, rule X, § 101(a).)

statute (Bus. & Prof. Code, § 6066) that failure or refusal of the Committee to certify an applicant is reviewable by the Supreme Court (*Brotsky* v. *State Bar, supra,* 57 Cal.2d at p. 300; see *Siegel* v. *Committee of Bar Examiners* (1973) 10 Cal.3d 156, 173 [110 Cal.Rptr. 15, 514 P.2d 967]; *Greene* v. *Committee of Bar Examiners* (1971) 4 Cal.3d 189, 191-192 [93 Cal.Rptr. 24, 480 P.2d 976]).

Applicants who, upon an initial screening by the Committee, are not found to possess the "good moral character" requisite for certification are referred to the Division of Trial Counsel of the State Bar. The division of trial counsel investigates those applications referred to it and after announcement of the last required part or subpart of the bar examination in which the applicant was successful, it reports the results of each investigation and its recommendation to the Committee of Bar Examiners. After receipt of the report, the Committee determines whether the applicant possesses good moral character. If the Committee concludes the applicant does not possess good moral character, the Committee refers the application to the division of trial counsel for further investigation or refers the application for a hearing. (Rules Regulating Admission to Practice Law, rule X, § 102(a), (b).)

E. *The doctrine of quasi-judicial immunity bars this action against the State Bar, the Committee of Bar Examiners, and their officials.*

██ ██ ██ ██ Greene contends that defendants' activities with respect to pre-admission investigations are not "judge-like" and are not part of a judicial or quasi-judicial process. Rather, he urges that the role of the State Bar, the Committee of Bar Examiners, and their officials, in investigating applicants for admission to practice law is that of a policeman who is not entitled to absolute immunity.[9]

---

[9]Greene urges that in light of *Supreme Court of VA.* v. *Consumers Union* (1980) 446 U.S. 719 [64 L.Ed.2d 641, 100 S.Ct. 1967], "it is not altogether clear that State Bar rules and investigations are 'judicial functions.'" In *Consumers Union,* the United States Supreme Court held that in promulgating the code of professional responsibility (The State Bar Code), the Supreme Court of Virginia and its members had exercised *legislative power* delegated to it by the state and in that capacity they enjoyed *legislative* immunity. (At pp. 721-722, 734 [64 L.Ed.2d at pp. 646-647, 655].) However, the Supreme Court of Virginia and its members performed more than a mere legislative role with respect to the State Bar Code, since it also heard appeals from lower court decisions in disciplinary cases, a traditional adjudicatory task, and had independent enforcement authority of its own. (At p. 734 [64 L.Ed.2d at p. 655].) The United States Supreme Court held that as to those functions, *judicial immunity* applied. (At pp. 734-735 [64 L.Ed.2d at pp. 655-656].) The court reaffirmed its position that judges defending against section 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities. (At pp. 734-735, citing *Stump* v. *Sparkman* (1978) 435 U.S. 349 [55 L.Ed.2d 331, 98 S.Ct. 1099] and *Pierson* v. *Ray* (1967) 386 U.S. 547 [18 L.Ed.2d 288, 87 S.Ct. 1213].)

Greene has stated in his briefs on appeal that this lawsuit is "confined to the process of

As we have noted, the doctrine of judicial immunity is one of the earliest products of English common law. The doctrine was established to protect the finality of judgments from continual collateral attack in courts of competing jurisdiction and to protect judicial decisionmaking from intimidation. Gradually, however, its primary objective became what it is today, the protection of judicial independence. (See *Pulliam* v. *Allen* (1984) — U.S. —, — [80 L.Ed.2d 565, 582, 104 S.Ct. 1970] (dis. opn. of Powell, J.).)

■ The common law immunities are not superceded by section 1983. On the contrary, the Supreme Court has held that Congress did not intend to abolish all common law immunities in enacting section 1983 (*Stump* v. *Sparkman, supra,* 435 U.S. 349, 356 [55 L.Ed.2d 331, 338]; *Pierson* v. *Gray, supra,* 386 U.S. 547, 554 [18 L.Ed.2d 288, 294]) and the court has recognized absolute legislative (*Tenney* v. *Brandhove* (1951) 341 U.S. 367, 378-379 [95 L.Ed. 1019, 1027-1028, 71 S.Ct. 783]), prosecutorial (*Imbler* v. *Pachtman* (1976) 424 U.S. 409, 430 [47 L.Ed.2d 128, 143, 96 S.Ct. 984]) and judicial (*Pierson* v. *Ray, supra,* 386 U.S. 547, 554-555 [18 L.Ed.2d 288, 294-295]) immunities from damages liability in section 1983 lawsuits.

■ Judges defending against section 1983 actions enjoy absolute immunity from *damages* liability for acts performed in their judicial capacities. (*Supreme Court of VA.* v. *Consumers Union, supra,* 446 U.S. 719, 734-735 [64 L.Ed.2d 641, 656-657]; *Stump* v. *Sparkman, supra,* 435 U.S. 349, 356-357 [55 L.Ed.2d 331, 338-339]; *Pierson* v. *Ray, supra,* 386 U.S. 547, 553-554 [18 L.Ed.2d 288, 294-295]; *Bradley* v. *Fisher* (1872) 80 U.S. (13 Wall) 335, 351 [20 L.Ed. 646].)[10] "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." (*Stump* v. *Sparkman, supra,* at p. 362 [55 L.Ed.2d at p. 342].) A judge is not deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, a judge will be subject to liability only when he has acted in the clear absence of all jurisdiction. (*Stump* v. *Sparkman, supra,* at pp. 356-357 [55 L.Ed.2d at pp. 338-339]; *Bradley* v. *Fisher, supra,* at p. 351 [20 L.Ed.2d at p. 650].)

investigation of [his] moral fitness." Further, his complaint is directed only to the investigative activities of the defendants. However, if Greene is implying that he is seeking to hold the State Bar and the Committee of Bar Examiners liable in damages for promulgating the State Bar Rules Regulating Admission to Practice Law in California, we point to the holding of *Consumers Union.* Under that decision, the State Bar and the Committee of Bar Examiners, as arms of the court, are shielded from liability for exercising legislative power with respect to admissions to practice law.

[10]Judicial immunity, however, does not absolutely insulate judicial officers from declaratory or injunctive relief when acting in their judicial capacities. (*Pulliam* v. *Allen, supra,* — U.S. —, — [80 L.Ed.2d 565, 578-579].)

This immunity "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (*Scott* v. *Stansfield* (1868) L.R. 3 Ex. 220, 223, quoted in *Bradley* v. *Fisher, supra,* 80 U.S. (13 Wall) 335, 350 [20 L.Ed. 646, 650]; see *Pierson* v. *Ray, supra,* 386 U.S. 547, 554.)

Thus, it is well settled that judges and those performing "judge-like" functions are absolutely immune from section 1983 damage liability for acts performed in their judicial capacities. (*Stump* v. *Sparkman, supra,* 435 U.S. 349, 355-357 [55 L.Ed.2d 331, 338-339]; *Richardson* v. *Koshiba* (9th Cir. 1982) 693 F.2d 911, 913.)

In analyzing the immunity issue in the instant case, we must first characterize the governmental activity involved, because the immunity granted depends not on the status of the defendant, but rather, on the specific work or function being performed. (*Butz* v. *Economou* (1978) 438 U.S. 478, 511-512 [57 L.Ed.2d 895, 919-920, 98 S.Ct. 2894]; *Clulow* v. *State of Okl.* (10th Cir. 1983) 700 F.2d 1291, 1298; *Verner* v. *State of Colo., supra,* 533 F.Supp. at p. 1115.) Thus, we must determine whether the defendants performed work which was functionally comparable to that of a judge (*Butz* v. *Economou, supra,* 438 U.S. 478, 513 [57 L.Ed.2d 895, 920]; *Simmons* v. *Bellinger,* (D.C. Cir. 1980) 643 F.2d 774, 778) and whether and to what degree immunity has historically been afforded for that function (see *Clulow* v. *State of Okl., supra,* 700 F.2d at p. 1298).

We note that bar associations and their officials charged with the duties of investigating, drawing up, and presenting cases involving *attorney discipline* have historically enjoyed absolute immunity from damage claims for such functions. (See *Clulow* v. *State of Okl., supra,* 700 F.2d at p. 1298; *Simons* v. *Bellinger, supra,* 643 F.2d at pp. 777-786; *Kissell* v. *Breskow* (7th Cir. 1978) 579 F.2d 425, 430; *Slavin* v. *Curry* (5th Cir. 1978) 574 F.2d 1256, 1266, mod. in part on other grounds (1978) 583 F.2d 779, overruled in part on other grounds in *Sparks* v. *Duval County Ranch Co. Inc.* (5th Cir. 1979) 604 F.2d 976, 978; *Ginger* v. *Wayne County Circuit Court* (6th Cir. 1967) 372 F.2d 621, 625; cert. den., 387 U.S. 935 [18 L.Ed.2d 998, 87 S.Ct. 2061]; *Clark* v. *State of Washington* (9th Cir. 1966) 366 F.2d 678, 681, cert. den., 375 U.S. 987 [11 L.Ed.2d 473, 84 S.Ct. 519]; *Verner* v. *State of Colo., supra,* 533 F.Supp. at p. 1115.)

Indeed, these committees and their members have enjoyed absolute immunity as "arms of the courts." (*Richardson* v. *Koshiba, supra,* 693 F.2d at p. 914.) The immunity attaches because of the functions performed by the committees, namely, prosecuting and adjudicating claims of professional

misconduct as an " 'integral part of the judicial process.' " (*Ibid.; Simmons v. Bellinger, supra,* 643 F.2d at pp. 777-786; *Clark v. State of Washington, supra,* 366 F.2d at p. 681; *Verner v. State of Colo., supra,* 533 F.Supp. at p. 1115.)

We find it instructive to examine the language in federal cases in which civil rights violations arising out of *disciplinary or disbarment* proceedings have been alleged against state bars or grievance committees.

In *Clark v. State of Washington, supra,* 366 F.2d 678, the district court noted that a prosecuting attorney, as a quasi-judicial officer, enjoys immunity from suit under the Civil Rights Act insofar as his prosecutorial functions are concerned, because such acts are committed in the performance of an "integral part of the judicial process." (*Id.,* at p. 681.) That observation led the court to conclude that "[a]s an arm of the Washington Supreme Court in connection with disciplinary proceedings, the Bar Association is [also] an 'integral part of the judicial process' and is therefore entitled to the same immunity which is afforded to prosecuting attorneys in that state." (*Ibid,* fn. omitted.)

In *Slavin v. Curry, supra,* 574 F.2d 1256, the district court held that members of the county bar association grievance committee were entitled to absolute judicial immunity stating: " 'The Grievance Committee is an administrative agency of the judicial department and is the arm of the Supreme Court in the discharge of its professional *policing duties.*' [Citation.] As agents of the court, the members of the Grievance Committee are *entitled to the same immunity that the judges would have if they exercised this function directly.*" (*Id.,* at p. 1266, italics added.)

*Kissell v. Breskow, supra,* 579 F.2d 425, involved a suit against the Executive Secretary of the Disciplinary Commission of Indiana. The executive secretary is appointed by the state Supreme Court and is empowered to investigate and prosecute attorney misconduct. The district court noted that the controlling question in determining whether the executive secretary was protected by absolute immunity in connection with his activities in instituting disciplinary proceedings against the plaintiffs was whether he was acting in a quasi-judicial capacity or in an *investigative* " 'police related' " role. (*Id.,* at p. 430, italics added; see *Hampton v. City of Chicago, Cook County, Illinois* (7th Cir. 1973) 484 F.2d 602, 608, cert. den. (1974) 415 U.S. 917 [39 L.Ed.2d 471, 94 S.Ct. 1413].)[11] The court found the conduct of which

---

[11]The *Kissell* court cited *Hampton v. City of Chicago, Cook County, Illinois, supra,* 484 F.2d 602, the leading case showing non-immune prosecutorial action. In *Hampton,* plaintiffs alleged that prosecutors planned and participated in an illegal raid of Hampton's residence which resulted in the unprovoked killing of Hampton and the killing or wounding of other

plaintiff complained consisted solely of the performance by the executive secretary of his duties under the state rules for admission to the bar and discipline of attorneys. (579 F.2d at p. 430.) The court observed: "Because those duties involve the *investigating* of alleged attorney misconduct, presenting recommendations to the Disciplinary Commission, and prosecuting cases of attorney misconduct before the Indiana Supreme Court, they are clearly as much quasi-judicial functions as are those of prosecutors." (*Ibid.*, italics added.) Hence, the court held the executive secretary was entitled to a grant of quasi-judicial immunity for his activities. (*Ibid.*)

In *Simons* v. *Bellinger, supra,* 643 F.2d 774, the District of Columbia Circuit Court held that members of the District of Columbia Committee on Unauthorized Practice of Law were entitled to absolute immunity in their investigatory activities to determine if plaintiff had complied with the laws and rules governing practice of law in the jurisdiction. (*Id.*, at pp. 775, 786.) The court determined that under the criteria of *Butz* v. *Economou, supra,* 438 U.S. 478 [57 L.Ed.2d 895], the committee's judgments possessed a " 'functional comparability . . . to those of a judge.' " (*Simons* v. *Bellinger, supra,* at p. 779.) First, the court reasoned, the committee members were clearly engaged in preparing, and perhaps initiating, a particular lawsuit—a critical phase of any prosecution. (*Id.*, at pp. 779-780; see *Imbler* v. *Pachtman, supra,* 424 U.S. 409, 431 [47 L.Ed.2d 128, 144].) Secondly, when assessing whether a prosecution should be initiated, the committee was performing, by delegation, the inherent judicial function of determining who is authorized to practice law. (*Simons* v. *Bellinger, supra,* at p. 780.) Thus, the court concluded: "[T]he Committee acts as a surrogate for those who sit on the bench. Indeed, were it not for the Committee, judges themselves might be forced to engage in the sort of inquiries which the plaintiffs have put in issue. In sum, the Committee members, as a bona fide arm of the Court of Appeals of the District of Columbia, must almost by definition make decisions comparable to those of a judge." (*Id.*, at p. 781, fn. omitted.)

 Before turning to the federal case law precedents pertaining to the *admission* process, we reiterate that judicial immunity extends to those functions "normally performed by a judge." (*Stump* v. *Sparkman, supra,* 435 U.S. 349, 362 [55 L.Ed.2d 331, 342]; *Slavin* v. *Curry, supra,* 574 F.2d at p. 1263.)

 The weight of authority is that the acts of Supreme Court justices in deciding matters pertaining to admission to the bar are judicial acts. (See

---

persons. (*Id.*, at pp. 606-607.) The *Hampton* court held that the prosecutor's conduct in planning and executing the illegal search and seizure was analogous to the conduct of police officials, and that in *that role* the prosecutors were entitled to only "good faith immunity," rather than absolute quasi-judicial immunity. (*Id.*, at p. 608-609; see discussion of *Hampton* in *Bach* v. *County of Butte, supra,* 147 Cal.App.3d at pp. 565-566.)

*Louis* v. *Supreme Court of Nevada* (D.Nev. 1980) 490 F.Supp. 1174, 1181-1182, and cases cited therein; *Moity* v. *Louisiana State Bar Ass'n.* (E.D.La. 1976) 414 F.Supp. 180, 183-184, fn. 17, affd. (5th Cir. 1976) 537 F.2d 1141.) Therefore, the performance of those acts by the justices (or a bar association surrogate) is protected by absolute judicial immunity against damages liability. (See *ibid.*)

In *Moity* v. *Louisiana State Bar Ass'n., supra,* 414 F.Supp. 180, applicants for admission to the Louisiana bar brought a civil rights action against the Louisiana State Bar Association and the Louisiana Supreme Court and its individual justices, challenging their denial of his application for taking the state bar exam. Although the district court dismissed the action against the defendants on other grounds, the court noted: "As to the Bar Association, the defense of quasi-judicial immunity would appear equally viable." (*Id.,* at p. 184, fn. 17.)

In *Woodard* v. *Virginia Bd. of Bar Examiners* (E.D.Vir. 1978) 454 F.Supp. 4, affd. (4th Cir. 1979) 598 F.2d 1345, the district court recognized that in evaluating applicants for admission to practice law in Virginia, the Virginia Board of Bar Examiners performs a judicial function on behalf of the Supreme Court of Virginia. (*Id.,* at pp. 5-6.)

A review of the relevant California case law reveals that in this state the admission process is also regarded as a judicial process and that the State Bar and the Committee of Bar Examiners are regarded as arms of the California Supreme Court when performing their duties in connection with the process.

In *Merco Constr. Engineers, Inc.* v. *Municipal Court, supra,* 21 Cal.3d 724, the California Supreme Court noted that " '[a]dmission to practice is almost without exception conceded everywhere to be the exercise of a judicial function . . . .' [citation]" (*id.,* at p. 727) and that " '[h]istorically, the courts, alone, have controlled admission, discipline and disbarment of persons entitled to practice before them.' [Citations.]" (*Id.,* at p. 728.)

The Supreme Court has repeatedly held that while the findings of the State Bar or the Committee of Bar Examiners are given great weight, they are not binding on the court. (*Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 450 [55 Cal.Rptr. 228, 421 P.2d 76]; see *Jacobs* v. *State Bar, supra,* 20 Cal.3d 191, 196; *Emslie* v. *State Bar, supra,* 11 Cal.3d at

pp. 224-225; *Brydonjack* v. *State Bar, supra,* 208 Cal. at p. 445.) In California, the State Bar and the Committee of Bar Examiners merely act as administrative arms of the Supreme Court for the purpose of assisting in matters of admission and discipline of attorneys. (See *Jacobs* v. *State Bar, supra,* 20 Cal.3d at p. 196; *Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 224).

The Supreme Court has explained that a State Bar disciplinary proceeding "is in essence the initial stage of an action in court" (*Brotsky* v. *State Bar, supra,* 57 Cal. at p. 301) and that the preliminary investigation by officers of the State Bar Board of Governors, or a local committee, before formal proceedings are instituted against an attorney, is "an inquiry by *officers* of the [Supreme Court] selected for the purpose of ascertaining the probable truth of the charge made." (*Herron* v. *The State Bar* (1931) 212 Cal. 196, 200 [298 P. 474], italics added; *Werner* v. *Hearst Publications Inc.* (1944) 65 Cal.App.2d 667, 672 [151 P.2d 308].)

With respect to applications for admission to practice law, the Supreme Court has held that the function of the Committee of Bar Examiners and the State Bar is but to *investigate* and to recommend for admission those found to be of the prescribed standards. (*Brydonjack* v. *State Bar, supra,* 208 Cal. at p. 445.) Further, the Court of Appeal has stated that the gathering and preliminary analysis of evidence concerning an applicant's moral character are integral parts of the process leading to the grant or denial of certification to the California Supreme Court for admission to the bar. (*Engel* v. *McCloskey* (1979) 92 Cal.App.3d 870, 881 [155 Cal.Rptr. 284].)

Here, when conducting Greene's pre-admission investigation, the State Bar, the Committee of Bar Examiners, and their officials, were performing functions "normally performed by a judge" and Greene dealt with them in their quasi-judicial capacities. (See *Stump* v. *Sparkman, supra,* 435 U.S. 349, 362 [55 L.Ed.2d 331, 342].) Since a judge would not be deprived of immunity because his actions were erroneous, done maliciously, or even in excess of his authority (*Id.,* at p. 356 [55 L.Ed.2d at p. 338]), so too, in their quasi-judicial capacities, the defendants cannot be deprived of their entitlement to absolute immunity even if, as Greene alleges, their actions can be so described. The reason for the rule is that, like judges, the State Bar, and the Committee of Bar Examiners, and their officials, must be able to perform their functions with independence and without fear of being liable in damages. (See *Pierson* v. *Ray, supra,* 386 U.S. 547, 554 [18 L.Ed.2d 288, 294].)

Moreover, like judges, those acting in quasi-judicial capacities, will be subject to liability only when they have acted in "the 'clear absence of all jurisdiction.'" *(Stump v. Sparkman, supra,* 435 U.S. 349, 356-357 [55 L.Ed.2d 331, 338-339].) Greene has alleged no facts to show that the defendants acted in the absence of all jurisdiction. On the contrary, the conduct of pre-admission proceedings, including pre-admission investigations, is within the jurisdiction of the State Bar and the Committee of Bar Examiners and their officials. Therefore, Greene's contention is totally without merit that when performing their functions in connection with his pre-admission investigation, defendants were engaged in " 'investigatory activities normally performed by layman, such as police officers.' [Citations.]" *(Tyler v. Witkowski* (7th Cir. 1975) 511 F.2d 449, 451; see *Hampton v. City of Chicago, Cook County, Illinois, supra,* 484 F.2d at p. 608.)[12]

We hold that the State Bar and the Committee of Bar Examiners, as arms of the Supreme Court, and their officials, as officers of the Supreme Court, are entitled to absolute quasi-judicial immunity for their acts while conducting a preadmission investigation.

Since Greene failed to plead a cause of action under the Civil Rights Act (42 U.S.C. § 1983) which can withstand a federal motion to dismiss (Fed. Rules Civ. Proc., rule 12, 28 U.S.C.; see *Bach v. County of Butte, supra,* 147 Cal.App.3d at pp. 561-564), the trial court's orders sustaining defendants' demurrer without leave to amend and dismissing Greene's complaint were proper in all respects.

---

[12]In *Imbler v. Pachtman, supra,* 424 U.S. 409 [47 L.Ed.2d 128], the Supreme Court held that *prosecutors* are absolutely immune from section 1983 damage suits which challenge conduct "intimately associated with the judicial phase of the criminal process." (At p. 430 [47 L.Ed.2d at p. 143].) However, the court left standing the rule enunciated by the Ninth Circuit in *Robichaud v. Ronan* (9th Cir. 1965) 351 F.2d 533, that a *prosecutor* is absolutely immune when he acts in a "quasi-judicial capacity," but that he enjoys only a qualified immunity "[i]f he acts in the role of a *policeman." (Id.,* at p. 536.) The *Imbler* court noted that some of the duties of a prosecutor in his role as an advocate involve actions that may also be denominated administrative or investigative, but it declined to lay down rules for determining which duties would give rise to absolute prosecutorial immunity. (*Imbler v. Pachtman, supra,* at pp. 430-431 [47 L.Ed.2d at pp. 143-144].) However, the Ninth Circuit undertook that task in *Freeman on behalf of The Sanctuary v. Hittle* (9th Cir. 1983) 708 F.2d 442, and *Ybarra v. Reno Thunderbird Mobile Home Village* (9th Cir. 1984) 723 F.2d 675. In those cases, the Ninth Circuit held that absolute prosecutorial immunity attaches to the actions of a prosecutor if the actions were performed as part of the preparation of his case, even if his actions could be characterized as investigative or administrative. (See *Freeman, supra,* 708 F.2d at p. 443 (investigative acts); *Ybarra, supra,* 723 F.2d at p. 679 (administrative acts).) And, in *Demery v. Kupperman* (9th Cir. 1984) 735 F.2d 1139, 1143-1144, the Ninth Circuit held the actions of a prosecutor (a California deputy attorney general), in conferring with potential witnesses for the purpose of determining whether to initiate administrative proceedings to revoke a medical license, were part of the prosecutor's case preparation, for which the prosecutor was absolutely immune, even if such actions could be characterized as administrative or investigative.

## DISPOSITION

The judgment is affirmed.

Lui, Acting P. J., and Danielson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 26, 1984.