[No. E007477. Fourth Dist., Div. Two. Nov. 26, 1990.]

H. LEE FISHER, Plaintiff and Appellant, v.
GEORGE R. PICKENS, Defendant and Respondent.

COUNSEL

H. Lee Fisher, in pro. per., for Plaintiff and Appellant.

Wilson, Borror, Dunn & Scott and Caywood J. Borror for Defendant and Respondent.

OPINION

McDANIEL, J.*—Before the action underlying this appeal was filed, Lynda Brown, plaintiff's adult daughter, was appointed conservator of the person of Lizabeth, plaintiff's developmentally disabled daughter. After the conservatorship was established, plaintiff brought suit against 13 defendants, including George R. Pickens, a court investigator who prepared a report for the probate court's use in the conservatorship proceeding. Plaintiff's grievance arose from his perception that defendant's supposed malfeasance, in a variety of forms incident to the preparation of this report, resulted in the wrongful establishment of the conservatorship.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Plaintiff's picturesque theories of liability, as pleaded in his complaint, were tested by a motion for judgment on the pleadings, and found wanting. A judgment of dismissal was entered accordingly, and this appeal followed. In affirming the judgment, we hold that the defendant, as a court investigator, is entitled to absolute judicial immunity with respect to the kind of action brought here. Otherwise, we hold that the common law concept of absolute judicial immunity, contrary to plaintiff's contention, was not abridged by the Tort Claims Act.

### SUMMARY OF PROCEEDINGS BEFORE JUDGMENT

Plaintiff's first amended complaint, which, as to defendant Pickens, was tested by a motion for judgment on the pleadings, named 12 other defendants on 7 different theories. This complaint runs to 92 pages and numbers the causes of action in separate series for each of the several defendants. Only two counts of this massive pleading apply to defendant Pickens, and, with reference to the facts alleged in those two counts, plaintiff alleges, because of the conservatorship proceeding outcome, that he has been "subjected to severe emotional distress, physical deterioration and financial loss, and is therefore entitled to compensatory and exemplary damages in the sum of $200,000.00."

The first count directed at defendant Pickens, styled as a cause of action for "constructive fraud" is predicated upon certain statements contained in defendant's "Pre-Appointment Report" which were allegedly "false" or "negligent" and had some influence on the court in its decision to appoint Lynda Brown as conservator for Lizabeth.

The second count directed at defendant Pickens styled as a cause of action for "conspiracy," plows essentially the same ground as does the other count, adding that defendant's allegedly fraudulent and negligent behavior was carried out as part of a conspiracy with the other defendants so as to establish the allegedly pernicious conservatorship.

Because the defendant's attack on the sufficiency of both these counts was based on glaring legal infirmities explicit on the face of each, there is no necessity to analyze the remaining allegations in any detail. As germane here, it was alleged that defendant Pickens had performed these allegedly wrongful acts as a "court investigator for the Superior Court of Stanislaus County." The other key feature, which provided the legal basis for challenging Pickens' liability, was that plaintiff was seeking money damages.

Within a short time after the case was filed in San Bernardino County Superior Court, defendant Pickens moved for a change of venue to

Stanislaus County. The motion was denied as to one cause of action and granted as to the other.[1]

In any event, after the case was at issue in San Bernardino County Superior Court, defendant Pickens noticed a motion for judgment on the pleadings. There were two legal theories upon which the sufficiency of the pleadings were challenged. The first was that defendant Pickens, being a quasi-judicial officer, enjoyed an absolute immunity from liability for torts allegedly committed in the discharge of his duties. The second, because defendant Pickens was a public employee, was that any recovery against him was barred unless it be alleged and proved that a claim had been timely presented pursuant to the Tort Claims Act. There was no such allegation in the complaint.[2]

The motion was granted, and a judgment reflecting such order was later entered and notice thereof duly given. This appeal followed.

## DISCUSSION

In pursuing this appeal, plaintiff in essence makes two assignments of error, although he does not label them as such per requirements of rule 15, California Rules of Court. As we read plaintiff's opening brief, he contends that a court investigator is not a quasi-judicial officer for whom absolute judicial immunity is available. His second position is that absolute judicial immunity is no longer available in this state by reason of the Tort Claims Act.

### I.

A noted authority has stated: "In 1977, a new *quasi-judicial officer* called the 'court investigator' was introduced into conservatorships." (Johnstone, Cal. Conservatorships (Cont.Ed.Bar 2d ed. 1983) p. 598, italics added.) The Johnstone text cites Probate Code section 1454 which is part of the recently amended Guardianship and Conservatorship Law. Probate Code section 1454 sets out the characteristics of a court investigator. ▆ Although we have found no case that directly states that a court investigator's activities are judicial or quasi-judicial in nature, we have concluded, as a result of analysis of the Probate Code and analogous case law, that a court investigator is a quasi-judicial official entitled to absolute, common law immunity.

[1] The record on appeal does not indicate whether an order of transfer was ever made as to that part of the complaint for which the motion to change venue was granted.

[2] The record contains copy of a letter dated August 20, 1989, by which plaintiff undertook too late to comply with the Tort Claims Act.

A court investigator shall be appointed by the court[3] if the proposed conservatee is unwilling or has been certified to be medically unable to attend the hearing on the petition for the appointment of a conservator. The court investigator then must interview the proposed conservatee personally and convey information about the nature of the proceedings, the right to oppose the proceedings, the right to trial by jury, and the right to counsel. (Prob. Code, § 1826, subds. (a)-(b).) The court investigator must also determine, among other things, if the proposed conservatee is unable or unwilling to attend the hearing, wishes to contest the proceedings, objects to the proposed conservator, or wishes to be represented by legal counsel and, if not, whether the appointment of legal counsel is helpful to the resolution of the matter necessary to protect the conservatee's interests. (See, Prob. Code, § 1826, subds. (c)-(j).)

Plaintiff maintains that a court investigator's functions are not quasi-judicial in nature but ministerial. He cites cases which point out the distinction between prosecutorial functions which are entitled to immunity and the functions of laymen (such as police officers) which are not entitled to immunity. In response, defendant cites cases in which absolute judicial immunity is extended to the *investigative* functions of court employees. For example, in *Greene* v. *Zank* (1984) 158 Cal.App.3d 497 [204 Cal.Rptr. 770], Greene sued the State Bar, the Committee of Bar Examiners and two of its employees for conspiracy to deprive him for improper reasons of his certificate for admission to the bar.

In *Greene*, the court stated that the admission process is a judicial process and the State Bar and the Committee of Bar Examiners are regarded as arms of the California Supreme Court when performing their duties in connection with the process. (158 Cal.App.3d at p. 511.) The court noted the Supreme Court's holding that, "the function of the Committee of Bar Examiners and the State Bar is but to *investigate* and to recommend for admission those found to be of the prescribed standards." (*Id.* at p. 512, quoting, *Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 445 [281 P. 1018, 66 A.L.R. 1507].) Further, "the gathering and preliminary analysis of evidence

---

[3] The person appointed by the court as a court investigator shall be an officer or special appointee of the court with no personal or other beneficial interest in the proceeding. (Prob. Code § 1454, subd. (a).) The person appointed as the court investigator must have the following qualifications: the training and/or the experience necessary to make the investigations required under the governing statutes; the ability to communicate with, assess, and deal with persons who are or may be the subject of proceedings under the governing statutes and the ability to perform the duties required of a court investigator. (Prob. Code § 1454, subd. (b)(1).) Furthermore, a court investigator must have a demonstrated sufficient knowledge of law so as to be able to inform conservatees and proposed conservatees of the nature and effect of a conservatorship proceeding and of their rights, to answer their questions, and to inform conservators concerning their powers and duties. (Prob. Code § 1454, subd. (b)(2).)

concerning an applicant's moral character are integral parts of the process leading to the grant or denial of certification to the California Supreme Court for admission to the bar [citation]." (*Greene, supra,* 158 Cal.App.3d 497, 512.) Thus, the court held that when conducting investigations, the State Bar and its employees were performing functions "normally performed by a judge." "[Because] a judge would not be deprived of immunity because his actions were erroneous, done maliciously, or even in excess of his authority [citation], so, too, in their quasi-judicial capacities, the defendants cannot be deprived of their entitlement to absolute immunity. . . . The reason for the rule is that, like judges, the State Bar, and the Committee of Bar Examiners and their officials, must be able to perform their functions with independence and without fear of being liable in damages." (*Ibid.*)

The reasoning in *Greene* is precisely applicable to this case. Defendant was appointed by the superior court in Stanislaus County and serves as an arm of that court. The gathering of evidence about the proposed conservatee is an integral part of the process leading to the appointment of a conservator. A recent case supports the characterization of Pickens's functions as those "normally performed by a judge."

In *Conservatorship of Sides* (1989) 211 Cal.App.3d 1086, 1094 [260 Cal.Rptr. 16], the plaintiff asserted that the court should not have proceeded with its conservatorship determination without the report of a court investigator. The court pointed to Probate Code section 1454, which, when read in conjunction with Probate Code section 1826, requires the appointment of a court investigator and an investigator's report only when the petition alleges that the proposed conservatee is unwilling or medically unable to attend the hearing. The court investigator then must make certain determinations pursuant to Probate Code section 1826 and convey certain information to the proposed conservatee pursuant to Probate Code section 1826 and also to Probate Code section 1828 which sets out the information which the *court* must provide to the proposed conservatee (e.g., the nature of the conservatorship and the effect of an adjudication on the conservatee's basic rights).

The investigator has the duty to provide information to the court in a written report at least five days before the hearing. The court in *Sides* stated, "[Because] the court is required to explain this same information to a proposed conservatee who is expected to, and does in fact, attend the hearing, there is no need for an investigator to duplicate this function." (*Sides, supra,* 211 Cal.App.3d 1086, 1094.) The court held that the interests of the proposed conservatee who appeared at the hearing were protected by the court's compliance with Probate Code section 1828 and thus the receipt of a court investigator's report was unnecessary.

Thus, based on *Sides,* because the court can impart to the conservatee the Probate Code section 1826 and section 1828 data when the conservatee is present in court, data which the court investigator provides to the conservatee when he or she cannot attend the hearing, we hold that the court investigator's providing such data, as was done here, constitutes performance of a function "normally performed by a judge." Defendant was appointed by the court, in the related proceeding here, because the petition for conservatorship alleged that Lizabeth was medically unable to attend the hearing. Thus, we hold that defendant performed the same functions the court would have performed if Lizabeth had been able to attend the hearing. This circumstance leads us to hold that defendant is entitled to the same common law, absolute immunity as that to which a judge is entitled.

## II

 Otherwise, plaintiff argues that his claim of negligence against defendant under the California Tort Claims Act (Gov. Code, § 810 et seq.) overrides common law, absolute judicial immunity.

We interpret this to be a fall-back position. In other words, we hear plaintiff to say, even though defendant by reason of the Tort Claims Act may be clothed with common law, absolute judicial immunity, that such immunity has been abridged.

Plaintiff's argument on this second point is flawed. His citations are numerous, but they are, for the most part, taken out of context and are not, ultimately, helpful. For example, for the proposition that statutes prevail over case law, plaintiff cites *Muskopf* v. *Corning Hosp. Dist.* (1961) 55 Cal.2d 211, 213 [11 Cal.Rptr. 89, 359 P.2d 457], "After a reevaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust." The California Legislature responded to this decision and a companion decision by enacting the Moratorium Act of 1961 which suspended the new rule of government liability pending the enactment of the Tort Claims Act in 1963. (Cal. Conservatorships, *supra,* at p.16.) "One of the principal objectives of the Tort Claims Act was to reduce uncertainty in the law by making all government liability dependent on statute." (*Id.* at p. 35.) The Supreme Court has stated: "[T]he intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Williams* v. *Horvath* (1976)

16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].) One of the basic provisions of the act is Government Code section 815.[4]

■ Otherwise, plaintiff argues that Government Code section 815.6 of the Tort Claims Act supports his action. This section provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." In his complaint, however, plaintiff alleged that defendant engaged in deceit, as defined in Civil Code section 1710 and constructive fraud under Civil Code section 1573. He alleged further that defendant held a confidential and official position to investigate and determine facts regarding conservatorship of Lizabeth but he did not set out in his complaint which enactment imposed a mandatory duty on Pickens as is required by Government Code section 815.6.

According to precedent, the controlling question when a violation of Government Code section 815.6 as alleged is "whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability." (*Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 470 [210 Cal.Rptr. 7].) The *Keech* court stated further, "If injury of the kind sustained by appellants was not one of the consequences which the Legislature sought to prevent through imposition of the alleged mandatory duty, liability does not obtain under Government Code section 815.6. [Citations]." (*Ibid.*)

Defendant's mandatory duties as a court investigator are enumerated in Probate Code sections 1454 and 1826. The allegations of the complaint do not show that defendant breached any of the duties set out in the Probate Code. Thus, the alleged injury plaintiff suffered as a result of defendant's alleged fraud and deceit is not one of the consequences the Legislature sought to prevent. Because "immunity is waived only if the various requirements of the act are satisfied," *Williams* v. *Horvath, supra*, 16 Cal.3d 834, 838, plaintiff's attempt to plead under the Tort Claims Act in such a way as to avoid absolute judicial immunity was unsuccessful.

Turning to other authority, "[i]t is a long-established rule that a judge is not to be held answerable in damages for acts performed in his judicial capacity." (*City of Santa Clara* v. *County of Santa Clara* (1969) 1

---

[4] Section 815 provides in pertinent part: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

Cal.App.3d 493, 498 [81 Cal.Rptr. 643]; accord, *Tagliavia* v. *County of Los Angeles* (1980) 112 Cal.App.3d 759, 761 [169 Cal.Rptr. 467].) A recent case which is conceptually similar to this case has analyzed the relationship between common law absolute judicial immunity and the Tort Claims Act. Plaintiff in *Frost* v. *Geernaert* (1988) 200 Cal.App.3d 1104 [246 Cal.Rptr. 440], sued seven superior court judges for fraud, conspiracy and intentional infliction of emotional distress. Plaintiff alleged that the judges' common law immunity had been abrogated by Government Code section 822.2[5], when read with Government Code section 810.2 which defines the term "employee" to include a judicial officer.

The court, engaging in statutory construction in *Frost* v. *Geernaert, supra*, 200 Cal.App.3d 1104, stated initially that "statutes should not be interpreted to alter the common law unless it is expressly provided they should do so; there is a presumption a statute does not, by implication, repeal the common law." (*Id.* at p. 1108.) Furthermore, the court must give effect to legislative intent " 'even when such an interpretation appears to be at odds with . . . the literal construction of the statutory language. [Citations].' " (*Ibid.*)

The *Frost* court explained that judicial officers were added to Government Code section 810.2 in 1977 at the same time that Government Code section 27648 was added which provides for a judge's recovery of attorney's fees and costs from a public entity when the judge retains his own counsel in a case in which he is entitled to representation by the public entity.

The court looked at the statement of legislative intent behind these additions to the statute and found no indication the Legislature intended to expand judicial liability through Government Code section 822.2 by modifying Government Code section 810.2. The court observed that "[l]iteral construction of the statutory language in Government Code sections 810.2 and 822.2 would lead to alteration of the common law doctrine of judicial immunity. 'Nothing in the language or history of the statute[s] would suggest that the Legislature intended to achieve so significant a result by indirection. If that were the intention, it would far more likely have been accomplished by directly addressing the issue rather than inferentially as is claimed here [citation]'." (*Frost* v. *Geernaert, supra*, 200 Cal.App.3d 1104, 1109.) Thus, the court held that section 822.2 did not abrogate the common law granting judicial immunity for acts done in the exercise of the judicial function.

Because plaintiff could not allege breach of a statutory duty such as to result in a waiver of immunity and the Legislature has not expressed an

---

[5] Government Code section 822.2 provides: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."

intent to expand judicial liability in enacting the Tort Claims Act, plaintiff's second assignment of error is likewise without merit.

## III

■ As an alternative ground for our decision, applicable to both counts of plaintiff's complaint in which he seeks to hold defendant liable in money damages, we note that plaintiff failed to allege that within 100 days after the onset of his purported grievance he filed with defendant's employer an appropriate claim. Where recovery of damages from a public employee is sought, the Tort Claims Act requires the presentation, in accordance with its provisions, of all claims for money or damages against public entities (Gov. Code, §§ 905, 905.2). Government Code section 911.2 specifies that a claim relating to injury to the person must be presented within 100 days of the accrual of the cause of action. Section 945.4 of the Government Code implements this requirement by declaring that absent a timely claim no action may be brought against the public entity.

In turn, Government Code section 950.2 prescribes that a cause against a public employee for injury resulting from an act or omission in the scope of his employment is barred if an action against the employing public entity is barred. Plaintiff did not present a claim to defendant's employer within 100 days of the accrual of his alleged cause of action. He points out, however, that he had submitted a claim to defendant on February 10, 1989. This was unavailing; he was required to submit his claim to the county, defendant's employing public entity.

On August 20, 1989, plaintiff did send a letter to the county counsel's office, offering to settle the case. Under Government Code section 948, the head of a state agency may settle cases under some circumstances. That letter included a "settlement application" and he used Government Code section 910, which lists the contents of a claim, as a model. He believed he was complying with the claims presentation rule; however, at this stage, the required procedure would have been for him to make a written application to the public entity for leave to present a late claim. (Gov. Code, § 911.4.)

Because plaintiff did not comply with the requirements of the Tort Claims Act, he could not plead a cause of action against defendant under that statute. The trial court's ruling that the complaint failed to state facts sufficient to constitute a cause of action was, therefore, correct.

Based upon the foregoing analysis, we hold that the trial court properly granted defendant's motion for judgment on the pleadings.

## DISPOSITION

The judgment is affirmed.

Dabney, Acting P. J., and Timlin, J., concurred.